**Misc. No. 2020-135**

# United States Court of Appeals
# for the Federal Circuit

**IN RE APPLE, INC.**

On Petition for a Writ of Mandamus from the United States District Court
for the Western District of Texas, Case No. 6:19-CV-00532-ADA,
Judge Alan Albright

## UNILOC 2017 LLC NON-CONFIDENTIAL RESPONSE TO APPLE INC.'S PETITION FOR WRIT OF MANDAMUS

WILLIAM E. DAVIS, III
DAVIS FIRM PC
213 N. Fredonia Street
Suite 230
Longview, Texas 75601
(903) 230-9090
bdavis@bdavisfirm.com
*Counsel for Plaintiff-Respondent*

CHRISTIAN JOHN HURT
DAVIS FIRM PC
213 N. Fredonia Street
Suite 230
Longview, Texas 75601
(903) 230-9090
churt@bdavisfirm.com
*Counsel for Plaintiff-Respondent*

JULY 1, 2020

# CERTIFICATE OF INTEREST

Counsel for Plaintiff-Respondent, Christian Hurt, certifies the following:

1.  The full name of every party or amicus represented by me is:

    Uniloc 2017, LLC

2.  The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

    None.

3.  All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

    CF Uniloc Holdings, LLC

4.  The names of all law firms and partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

    William Ellsworth Davis, III, Christian J. Hurt, Debra Coleman, Edward K. Chin, and Ty Wilson,  Davis Firm, P.C.;

5.  The title and number of any case known to counsel to be pending in this or any other court agency that will directly affect or be directly affected by this court's decision in the pending appeal. See Fed. Cir. R. 47.4(a)(5) and 47.5(b). (The parties should attach continuation pages as necessary):

    No other appeal from these proceedings was previously before this Court or any other appellate court. There is no case pending in this Court or any other court that will directly affect or be directly affected by the Court's decision here.

DATED: July 1, 2020                  Respectfully submitted,


                                     /s/Christian John Hurt
                                     Christian John Hurt
                                     *Counsel for Plaintiff-Respondent*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................... iii

INTRODUCTION ..................................................................................1

STATEMENT OF RELIEF SOUGHT .....................................................2

STATEMENT OF ISSUE .......................................................................3

STATEMENT OF THE CASE .................................................................3

    I.     The '088 Patent .....................................................................3

    II.    The District Court Litigation .................................................3

REASONS FOR DENYING THE PETITION ...........................................6

    I.     The Standard for Mandamus is Exacting—Requiring a Clear Abuse of Discretion That Produced a Patently Erroneous Result...................6

    II.    It is Proper for Apple to Face This Suit in the WDTX—Where Apple is Poised to Be the Largest Private Employer in the District...............................................................................6

    III.   The District Court Did Not Clearly Abuse Its Discretion When It Found that Apple Failed to Meet its Heightened Transfer Burden.....10

          A. The Decisions of Other Courts to Transfer Other Uniloc Cases Was Not Binding, as Apple Admitted Below.......................................11

          B. Apple Does Not Show Error in the District Court's Findings on the Private-Interest Factors .................................................................13

              1. The Court Reasonably Found That the Convenience of Willing Witnesses Factor Was Neutral..................................................13

              2. The Court Did Not Hold That Uniloc's Choice of Forum Was a Distinct Factor .........................................................................20

i

3.  The Court Reasonably Found That the Compulsory Process Factor Was Neutral ................................................................20

4.  The Court Reasonably Found That the Location of Sources of Proof Only Slightly Weighed in Favor of Transfer .................22

5.  The Court Reasonably Found That Judicial Economy Weighed Heavily Against Transfer..........................................................25

C.  Apple Does Not Show Error in the District Court's Analysis of the Public-Interest Factors ...................................................................28

1.  The Court Reasonably Concluded That the Local Interest Factor Was Neutral ............................................................................28

2.  The Court Reasonably Found That the Time to Trial Factor Weighed Against Transfer........................................................30

D.  The District Court Was Well Within Its Discretion to Deny Apple's Motion in View of These Factual Findings ...................................32

CONCLUSION ......................................................................................33

CONFIDENTIAL MATERIAL OMITTED

The redacted material on pages 19 and 22 of this Response includes confidential information subject to the Protective Order entered by the district court on June 5, 2020.

# TABLE OF AUTHORITIES

## Cases

*Action Indus., Inc. v. U.S. Fid. & Guar. Co.*
    358 F.3d 337 (5th Cir. 2004)..........................................................................*10*

*Allied Chem. Corp. v. Daiflon, Inc.*
    449 U.S. 33 (1980) ...................................................................................*6*

*Anderson v. Bessemer City*
    470 U.S. 564 (1985) ................................................................................*12*

*Georgia-Pacific Corp. v. United States Plywood Corp.*
    318 F. Supp. 1116 (S.D.N.Y. 1970)...........................................................*22*

*Golden Bridge Tech., Inc. v. Nokia, Inc.*
    527 F.3d 1318, 1322 (Fed. Cir. 2008)........................................................*10*

*In re Affymetrix, Inc.*,
    2010 U.S. App. LEXIS 7968, (Fed. Cir. Apr. 13, 2010) ..............................*18*

*In re Apple Inc.*
    No. 2020-104 (Dkt. 36) (Fed. Cir. Dec. 20, 2019).......................*8, 18, 19, 22*

*In re Apple Inc.*
    No. 2020-104, (Dkt. 52)(Fed. Cir. Mar. 30, 2020) ........................................*8*

*In re Apple Inc.*
    No. 2020-115, 2020 U.S. App. LEXIS 14317
    (Fed. Cir. Apr. 22, 2020).........................................................................*21*

*In re Apple Inc.*
    No. 2020-127, 2020 U.S. App. LEXIS 18899
    (Fed. Cir. June 16, 2020)..............................................................*8, 17, 19, 32*

*In re ASM Int'l, N.V.*
    774 F. App'x 650 (Fed. Cir. 2019).............................................................*26*

*In re Google Inc.*
   No. 2017-107, 2017 U.S. App. LEXIS 4848
   (Fed. Cir. Feb. 23, 2017) .................................................................*27*

*In Re TS Tech. USA Corp.*
   551 F.3d 1315 (Fed. Cir. 2008) .......................................................*7*

*In re Vistaprint Ltd.*
   628 F.3d 1342 (Fed. Cir. 2010) .......................................................*6*

*In re Volkswagen of Am., Inc.*
   545 F.3d 304 (5th Cir. 2008) ...............................................*6, 10, 20*

*In re ZTE (USA) Inc*
   890 F.3d 1008 (Fed. Cir. 2018) .......................................................*7*

*Kearns v. Chrysler Corp.*
   32 F.3d 1541 (Fed. Cir. 1994) ........................................................*12*

*RCA Corp. v. Data Gen. Corp.*
   887 F.2d 1056 (Fed. Cir. 1989) ......................................................*12*

*TC Heartland v. Kraft Foods Group Brands LLC*
   137 S. Ct. 1514 (2017) ...................................................................*7*

*Singleton v. Wulff*
   428 U.S. 106, 96 S. Ct. 2868, 49 L. Ed. 2d 826 (1976) ...............*10*

## Statutes & Rules

28 U.S.C. § 271 ................................................................................*17*

28 U.S.C. § 1391 ................................................................................*7*

28 U.S.C. § 1400(b)......................................................................*1, 7, 8*

28 U.S.C. § 1404(a)....................................................................*passim*

# INTRODUCTION

Apple seeks a writ of mandamus, an extraordinary remedy, to order U.S. District Judge Alan Albright to transfer this case to the Northern District of California ("NDCA").   Apple claims that it is inconvenient to litigate this case in a district where it has a billion-dollar, 130-acre campus and where it employs approximately 8,000 people across all aspects of its business, including finance, marketing, technical support, and product engineering.   And Apple demands this extraordinary remedy even though relevant Apple witnesses and third-party witnesses such as Flextronics, which manufactures the accused Mac Pro, are in the Western District of Texas ("WDTX").   Furthermore, both inventors of the asserted patent reside in New York, making the NDCA less convenient for those witnesses.

Apple's statement that "[o]nce again, a non-Texas plaintiff has sued Apple for patent infringement in the Waco Division of the Western District of Texas in a case having no connections to that venue" is simply untrue.   Apple has a substantial connection to the WDTX as it relates to this case.   Apple already enjoys a threshold level of convenience and fairness provided by Section 1400(b) because Apple has committed acts of infringement and possesses an incredibly large place of business in WDTX.   Apple's WDTX presence more than satisfies Section 1400(b) in this case, and Apple admits as much.   Moreover, Uniloc is registered to do business in Texas, maintains an office, documents, and employees in Texas, and third-party

witnesses such as Flextronics and prior art witnesses are also located in the District. It is therefore disingenuous for Apple to proclaim that this case has no connection to WDTX.

In seeking a writ of mandamus under Section 1404(a), Apple must show that the District Court abused its discretion in refusing to transfer a properly venued case to Apple's chosen forum. But Apple filed its Petition before the Court issued its written opinion. Consequently, the Petition neither addresses the Court's 1404(a) analysis nor the underlying factual findings. Merely presuming that the Court abused its discretion fails to meet the exacting standard for obtaining a writ. And Apple's Petition is a rehash of its *Fintiv* and *STC.UNM* Petitions that this Court recently denied.

Showing a clear abuse of discretion is an exacting task. It requires, at a minimum, reading the opinion before rushing to this Court. Likewise, unsupported and misguided allegations of venue manipulation do not satisfy Apple's burden. Because the District Court followed established precedent and was within its discretion to deny transfer, Uniloc respectfully requests denial of Apple's Petition.

## STATEMENT OF RELIEF SOUGHT

Uniloc respectfully requests that the Court deny Apple's Petition.

**STATEMENT OF ISSUE**

Did Apple's Petition show that the District Court clearly abused its discretion when it held that Apple failed to show that the NDCA was a clearly more convenient forum than the WDTX?

**STATEMENT OF THE CASE**

### I.    The '088 Patent

This case involves one Patent, U.S. Patent No. 6,467,088 ("the '088 Patent"). The '088 Patent discloses a reconfiguration manager to control the reconfiguration of software or other components of an electronic device, such as a desktop, laptop, and personal digital assistant (PDAs). The manager receives a reconfiguration request, *e.g.*, a software upgrade request from the electronic device. It determines one or more device components that are required to implement the reconfiguration request, *e.g.*, the upgraded software. The manager utilizes information about the current configuration of the device, such as the current hardware and software, to determine if the requested upgrade would or would not be compatible with that existing configuration. If so, the device receives the software upgrade; if not, the manager blocks the upgrade. The invention thus ensures that upgrades are compatible with the configuration of a given device before they are implemented in that device, thereby avoiding problems associated with inconsistent upgrades.

## II.    The District Court Litigation

Uniloc alleges that Apple's software download functionality, including how Apple determines compatibility for application and operating system software updates through the App Store, infringes the '088 Patent.  The Accused Products include Apple devices that run iOS and macOS-based operating systems, including computers (*e.g.*, Mac Pro, iMac, and Macbook), iPhones, iPads, and other devices (*e.g.*, Apple TV and Apple Watch).

The accused functionality is critical to how Apple seamlessly integrates software (*e.g.*, apps) into its devices, such as the iPhone.  Part of the reason is because apps heavily rely on functionality embedded in Apple's operating systems.  Often, app developers can only use this embedded functionality in order for Apple to approve their apps for sale through the App Store.  Apple, however, frequently updates the operating system (adding, deleting, and changing those embedded frameworks).

It is thus vital for Apple and app developers to ensure that the applications are compatible with the capabilities of the user's device prior to installation—otherwise the application may crash, not run properly, or possibly damage the device.  It is likewise critical to ensure that updates will function properly on the device.  Apple tells developers that "[r]egular app updates can help you stay competitive on the App Store, as each new release is an opportunity to reengage existing users and attract

new users."[1]  Apple earns substantial revenue from the App Store, and has paid significant royalties to third-party developers.[2]  To achieve these goals, Apple uses the technology claimed in the '088 Patent.

Apple employs approximately 8,000 people in the WDTX, in areas relevant to the accused technology, such as engineers, sales and marketing personnel, technical support, and financial personnel.[3]  Apple's contract manufacturer, Flextronics, assembles the Accused Mac Pro (which contains the macOS and App Store software) in the District.  Apple's WDTX-based engineers also work on the functionality that ensures delivery of the updates.  And Apple's WDTX campuses handle payments to third-party developers.

Apple moved to transfer this case to the NDCA.  The District Court held a hearing on Apple's Motion on May 12, 2020, and orally denied Apple's Motion.  Apple then filed this Petition on June 15, 2020, before the District Court issued a written decision (which it issued on June 22, 2020).  Uniloc files this response to Apple's Petition.

---

[1] *See, e.g.*, https://developer.apple.com/app-store/app-updates/.

[2] *E.g.*, https://developer.apple.com/videos/play/wwdc2017/101/ (at 1:14:43–1:15:00).

[3] As the District Court noted, SAppx11–12, Apple began expanding its presence in 2019 to employ up to 15,000 people at its new 3-million-square-foot Austin campus *See, e.g.*, https://www.apple.com/newsroom/2019/11/apple-expands-in-austin/.

## REASONS FOR DENYING THE PETITION

### I.    The Standard for Mandamus is Exacting—Requiring a Clear Abuse of Discretion That Produced a Patently Erroneous Result

"Mandamus is an extraordinary remedy," and it is available only if the Petitioner demonstrates a "clear and indisputable" right to the relief sought. *In re Vistaprint Ltd.*, 628 F.3d 1342, 1344 (Fed. Cir. 2010) (quoting *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 35 (1980)).   This standard requires Apple to "demonstrate that the court's denial of transfer was so patently erroneous as to amount to a clear abuse of discretion." *Vistaprint*, 628 F.3d at 1344 (quoting *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 310 (5th Cir. 2008) (en banc) (*Volkswagen I*)).   Apple's Petition does not meet this high standard.

### II.    It is Proper for Apple to Face This Suit in the WDTX—Where Apple is Poised to Be the Largest Private Employer in the District

Apple devotes a substantial portion of its Petition to accusing Uniloc of venue manipulation and "judge shopping."   The bulk of those arguments were not presented below, and they are a distraction from the Section 1404(a) issues.

The facts—which Apple ignores—show why it is appropriate for Apple to face suit in the WDTX in this case: Apple employs around 8,000 people in the District and is expanding one facility to accommodate up to 15,000 employees (which will make it the largest private employer in the District).   And Apple's WDTX facilities run the full range of Apple's business.

That presence is important, and it rebuts Apple's allegations of venue manipulation. After the Supreme Court's *TC Heartland* decision, plaintiffs have a narrow set of options. 137 S. Ct. 1514, 1516–17 (2017); 28 U.S.C. § 1400(b). Patent venue under Section 1400(b) is now more restrictive than the broad venue provisions of Section 1391 (which applied pre-*TC Heartland*). *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1014 (Fed. Cir. 2018). Before *TC Heartland*, Section 1404(a) played a significant role to ensure that a plaintiff's chosen venue was convenient for the parties and witnesses. *See, e.g.*, *In TS Tech. USA Corp.*, 551 F.3d 1315, 1321 (Fed. Cir. 2008) (issuing writ where "[n]one of the companies have an office in the Eastern District of Texas; no identified witnesses reside in the Eastern District of Texas; and no evidence is located within the venue.").

Section 1400(b) now performs much of that work post-*TC Heartland*. It limits a plaintiff's choice of venue to those that are presumed convenient for a defendant, *viz.*, either the venue of its place of incorporation or those venues in which (1) it has committed acts of infringement and (2) has a regular and established place of business. If a defendant chooses to establish a regular place of business in a district and commits acts of infringement, the law says that they may fairly be required to answer claims of patent infringement there.

Apple did not contest that venue is proper in the WDTX under Section 1400(b). SAppx36, at ¶ 5. Because Apple is a California corporation, that means

that Apple did not contest (1) that Apple itself has committed the acts that Uniloc alleges infringes in the WDTX; and (2) that it has a regular and established place of business in the WDTX. That admission shows that, contrary to the Petition, Apple has a relevant connection to this District.

Rather than accept that presence, Apple has moved to transfer, under 1404(a), each recent case against it in the WDTX to NDCA asserting that NDCA is clearly more convenient in each instance. SAppx5–8. That assertion is facially implausible. And, as the District Court found, Apple seeks through its Section 1404(a) litigation strategy to only face suit in its preferred forum and refuses to accept that transfer under Section 1404(a) is only permissible when the requested forum is clearly more convenient for all concerned. *See id*. Apple attempts to "effectively—but incorrectly—transmute[] plaintiff's choice of forum into defendant's choice of forum." SAppx7. This Court recently rejected Apple's mandamus attempts in *Fintiv* and *STC.UNM*.[4] The same outcome should apply here.

To distract from its extraordinary presence in WDTX, Apple accuses Uniloc of "venue manipulation" and "judge shopping." It claims that Uniloc dismissed a prior lawsuit assert asserting the '088 Patent before Judge Yeakel in 2018, while

---

[4] *In re Apple Inc.*, No. 2020-127, 2020 U.S. App. LEXIS 18899 (Fed. Cir. June 16, 2020) (non-precedential) (*STC.UNM*); *In re Apple Inc.*, No. 20-104 (Dkt. 36) (Fed. Cir. Dec. 20, 2019) (non-precedential) (*Fintiv*) and (Dkt. 52) (Fed. Cir. Mar. 30, 2020) (non-precedential order denying *en banc* review petition in *Fintiv*).

Apple's transfer motion was pending, and then refiled the case in 2019 (where it was assigned to Judge Albright) in order to avoid a presumed transfer by Judge Yeakel and "judge shop." No evidence supports Apple's bold assertions, and Apple's assertions are not relevant to any Section 1404(a) factor. And the evidence shows that they are without merit.

Uniloc filed twelve cases against Apple in the WDTX in 2018. That included one case asserting infringement of the '088 Patent (the -296 case). Uniloc dismissed the -296 case, but not to manipulate venue. It voluntarily dismissed the -296 case without prejudice pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i) so that it could verify transfer of the '088 patent to Uniloc from the prior owner. In the interim, Apple filed a Petition for *Inter Partes* Review of the '088 Patent. *See* SAppx3. The Patent Trial and Appeal Board denied institution. *See* SAppx4. Uniloc then filed this case.[5]

Uniloc did not dismiss the other eleven cases in the WDTX. If Uniloc dismissed the -296 case to manipulate venue and shop judges, then why did Uniloc dismiss only *one* of its cases in 2018 and not all twelve? The simplest explanation is correct: Uniloc's dismissal had nothing to do with venue or shopping judges.

Uniloc believed then, as it does now, that Judge Yeakel should have declined

---

[5] Given the filing of the case after the *Inter Partes* Review decision, Uniloc's counsel initially believed that the -296 case was dismissed during the pendency of the *Inter Partes* Review proceedings. Appx269–270. It later confirmed the above facts.

to transfer the other cases.  But it is speculation to guess how Judge Yeakel might have ruled on the -296 case.  And the answer to that question does not matter in this case: Apple conceded below that Judge Yeakel's transfer decisions were "certainly not controlling" on the District Court.  Appx239.

There was no venue "maneuvering."  Nor was there any improper "judge shopping."  In any event, Apple failed to raise its "judge shopping" arguments below and thus waived them for appeal.  *Golden Bridge Tech., Inc. v. Nokia, Inc.*, 527 F.3d 1318, 1322 (Fed. Cir. 2008) ("[I]t is the general rule . . . that a federal appellate court does not consider an issue not passed upon below.") (quoting *Singleton v. Wulff*, 428 U.S. 106, 120, 96 S. Ct. 2868, 49 L. Ed. 2d 826 (1976)).

### III.    The District Court Did Not Clearly Abuse Its Discretion When It Found that Apple Failed to Meet its Heightened Transfer Burden

The standard for Apple to prevail on its motion below was to "demonstrate[] that the transferee venue is ***clearly more convenient***."  *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) (*Volkswagen II*) (emphasis added); *see* SAppx2–3 (discussing 5th Circuit standard).  The convenience analysis turns on a number of public and private interest factors, none of which have dispositive weight.  SAppx2 (quoting *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004)).

It is undisputed that the District Court conducted a reasoned, detailed analysis of each disputed factor.  The Court reached the following findings on each factor:

| ***Volkswagen* Factor** | **Conclusion** |
|---|---|
| the relative ease of access to sources of proof | Slightly in favor of transfer |
| the availability of compulsory process to secure the attendance of witnesses | Neutral |
| the cost of attendance for willing witnesses | Neutral |
| all other practical problems that make trial of case easy, expeditious, and inexpensive | Heavily against transfer |
| the administrative difficulties flowing from court congestion | Against transfer |
| the local interest in having localized interests decided at home | Neutral |
| the familiarity of the forum with the law that will govern the case | Neutral (agreed) |
| avoidance of unnecessary problems of conflict of laws of the application of foreign law | Neutral (agreed) |

The District Court was well within its discretion to deny Apple's Motion based on this analysis. And because Apple did not wait for the Court to issue its Order, it guessed wrong at how the Court would rule on a number of factors. Apple also does not challenge the Court's balancing of all the factors to decide whether to transfer or retain this case. Indeed, Apple declined to challenge several findings at all. Instead, Apple argues on appeal that the decisions of other judges required this judge to transfer this case, despite admitting below that the other decisions were merely persuasive and not binding.

### A. The Decisions of Other Courts to Transfer Other Uniloc Cases Was Not Binding, as Apple Admitted Below

Apple's Petition does not focus on *this case*. Its primary complaint is that the

District Court did not follow the decisions of other judges to transfer ***other cases***. But when directly questioned on this point, Apple admitted that those decisions were only "persuasive"—and "not controlling," Appx239—to which the District Court agreed.  SAppx8 ("[T]he fact that other Texas judges transferred other Uniloc cases from Texas to NDCA is—at the most—only persuasive evidence.").  Apple's concession is consistent with established law.  *See Anderson v. Bessemer City*, 470 U.S. 564, 574 (1985) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."); *Kearns v. Chrysler Corp.*, 32 F.3d 1541, 1547 (Fed. Cir. 1994) (quoting *RCA Corp. v. Data Gen. Corp.*, 887 F.2d 1056, 1065 (Fed. Cir. 1989)) ("[That] we might have reached a different result or might have affirmed had the district court gone the other way are insufficient bases for reversal under the abuse of discretion standard which applies to our review of this part of the court's judgment.").  And Apple cannot now argue differently on appeal.

    This case also involves a different record, which Apple fails to address.  The District Court detailed many differences between this case and the other cases.  SAppx9–14.  As it related to the EDTX cases, Apple's presence in the WDTX greatly exceeds its presence in the EDTX.  SAppx9–11.  By 2019, Apple closed its only EDTX retail store; at the same time, it employed over 7,000 employees in the WDTX.  SAppx11.  Much of that presence is new—***after*** the prior cases were

transferred—including a growing number of engineers.  SAppx11.  Apple is also

greatly expanding its WDTX presence, fueled by local tax incentives, including

building its own large hotel.  SAppx11–12.  And Apple's WDTX-based staff covers

the spectrum of Apple's business.  SAppx11–12.

There are also significant differences in the locations of proof between this

case and those prior cases, *e.g.*, a number of third parties as well as the inventors

were located in California in those cases; here, there is substantial WDTX proof, and

the inventors are located substantially closer to the WDTX.  SAppx13–14.  These

differences weighed against transferring this case.

### B.     Apple Does Not Show Error in the District Court's Findings on the Private-Interest Factors

#### 1.     The Court Reasonably Found That the Convenience of Willing Witnesses Factor Was Neutral

The District Court found that this factor was neutral.  SAppx24–27.  To assess

this factor, the Court looked to both party and non-party witnesses.  SAppx26.  For

party witnesses, the Court concluded that this factor weighs slightly in favor of

transfer.  SAppx26.  With regard to Apple's witnesses, the Court credited Apple's

evidence  to find that "the location of Apple's witnesses weighs in favor of transfer."

SAppx26.  With regard to Uniloc's witnesses, who the Court found are located "in

or near both districts" and who additionally submitted declarations that they would

willingly travel to WDTX for trial, the Court concluded that this factor was neutral.

SAppx26.

With regard to third party witnesses, the District Court found that this factor weighed against transfer. SAppx26–27. The Court determined that a potential prior art witness in the District (Mr. Foote) minimally moved this factor towards retention because Apple opted to omit Mr. Foote's patent from its invalidity contentions. SAppx26. For the two inventors and the prosecuting attorney, all of whom are based in New York, the Court applied the Fifth Circuit's "100-mile" rule and rightly concluded that NDCA would not be clearly more convenient for those witnesses than if the trial proceeded in WDTX. SAppx26–27.

In total, the District Court found that the factor was neutral. That was because both Apple and Uniloc will likely have limited third party witnesses, and "[a]s one of the most important witnesses will be the inventors," their location in New York weighed against transfer. SAppx27.

Apple's Petition does not address this reasoning. It instead rests on a false premise: "Every identified potential witness is in California—most in the Northern District." Pet. at 18. That statement is simply incorrect, as the District Court's careful analysis of this factor shows. And Apple does not address the New York location of the inventors and prosecuting attorney, the WDTX location of prior art witnesses, or Uniloc's Texas-based witnesses. It waived its right to do so in Reply.

Apple instead faults the District Court for supposedly finding that "the

14

convenience of plaintiff's witnesses should not be considered." Pet. at 23.  But the Court did not do that.  And, had Apple waited for the opinion to issue before filing its Petition, it could have addressed what the Court did hold.

Apple also plays up its hand-picked party witnesses that allegedly reside in California and attempts to diminish its WDTX-based activities. Pet. at 18–21.  This does not show clear error—especially when the District Court's analysis on this factor did not depend on Apple's WDTX-based activities and the Court actually credited Apple's evidence.  *See* SAppx24–27.

Apple's assertion that it lacks any WDTX presence related to this case is also wrong.  Apple's content-delivery-network team—which contains at least seven engineers in Austin—is relevant, and the District Court credited that team in discussing the sources of proof factor.  SAppx20–22.  Witnesses from that team are relevant because the content delivery servers deliver the software downloads to users, including app updates.

Uniloc alleged that such download functionality meets the limitations of several claims.  Asserted claim 3, for example, recites "downloading the determined component [*e.g.*, updated software] to the electronic device . . . ."  Appx30–31; *see also* SAppx31 (claiming the apparatus that provides the download).   In its infringement contentions, Uniloc pointed to downloading the updated application as an example of a download that met this limitation (SAppx60):



Apple asserts that these witnesses are not relevant because Uniloc's infringement contentions—served before obtaining discovery—do not include the words "content-delivery network" (or "CDN"). Pet. at 20–21. But Apple's witness admitted at deposition that the download—"the actual app or content"—comes from the "content delivery network service." SAppx67.[6] Precisely what Uniloc alleged in its infringement contentions. And it is undisputed that at least seven of those engineers reside in the WDTX—and Apple did not identify any such witnesses residing in the NDCA. Apple cannot limit the venue inquiry through an improperly narrow reading of Uniloc's infringement contentions.

Apple is also wrong about Flextronics, another witness the Court credited under the sources of proof factor. *See* SAppx20–22. Flextronics manufactures the

---

[6] Third-party sources of proof also confirm that Apple utilizes a content-delivery networks for operating system updates. *See, e.g.*, https://arxiv.org/pdf/1810.02978.pdf (paper entitled "Dissecting Apple's Meta-CDN during an iOS Update").

Mac Pro in the WDTX. The Mac Pro is listed as an Accused Product in Uniloc's infringement contentions. Appx35. Despite that, Apple asserts that Flextronics is not relevant because this case does not involve a manufacturing process. Pet. at 19–20. But the District Court reasonably rejected that argument. SAppx24 ("Apple provides little argument to the contrary, other than stating that the case concerns software, not hardware."). And whether the Mac Pro infringes "is a merits issue, not one that should be decided on mandamus review in the context of a motion to transfer venue." *In re Apple Inc.*, 2020 U.S. App. LEXIS 18899, at *9.

It was reasonable for the District Court to conclude that the assembly of the Mac Pro in Austin was relevant to this case. The Mac Pro, as assembled, contains the macOS and App Store software that forms the basis of Uniloc's claims. Flextronics is thus relevant to Uniloc's direct and indirect infringement claims via Apple's direction of and instructions to Flextronics. And the MacPro's assembly in WDTX also determines the scope of infringement under Section 271 even if the MacPro is sold or used outside the United States.

Apple does not dispute this in its Petition, other than to assert that Uniloc "was free to obtain discovery from Flextronics" to confirm these facts. Pet. at 20. The District Court rightly rejected this argument: "even though the Court did permit venue discovery in this case, venue discovery was directed at Apple, not Flextronics." SAppx21. And Apple refuses to provide any discovery relating to

Flextronics.  That includes discovery showing that Flextronics loads the Mac Pro with the macOS and App Store software in Austin.  Apple cannot show clear error while withholding the evidence that bears on its assertions.  *See In re Apple*, No. 20-104 (Dkt. 36), at 4–5 (holding that the District Court acted in its discretion even when Apple submitted affidavit that it contended "demonstrated that these individuals [were] not potential witnesses").

Apple's argument that the Mac Pro is only one of the Accused Products (Pet. at 19) is likewise unavailing.  None of the Accused Products are assembled in the NDCA.  And the remaining devices are manufactured overseas.  That does not require transfer, especially at the mandamus stage.  *See, e.g.*, *In re Affymetrix, Inc.*, 2010 U.S. App. LEXIS 7968, at *5 n.1 (Fed. Cir. Apr. 13, 2010) (non-precedential) ("[W]here, as here, the products appear to be sold under discrete contracts with individual distributors located in only one district, or only a relative few districts, and where, as here one of those districts is the chosen venue, the connection of the chosen venue is stronger.").

There are additional reasons to discount Apple's arguments.  Apple's Motion hinged on a declaration from Mr. Jaynes, a professional venue witness who has been deposed approximately 70 times in the last five years.  SAppx48.  The names of three of the four witnesses that Mr. Jaynes identified (Ms. Caldbeck, Mr. Jaynes, and Mr. Ankenbrandt) do not appear on any Apple-produced merits documents (which

total around 800,000 pages). And further discovery questions whether the declaration accurately identified the relevant technical witnesses.[7]

Considering the full record, the District Court did not clearly err in finding that this factor was neutral. Apple's Petition reduces to a disagreement over whether certain witnesses have relevant information. But "whether an individual is deserving of consideration in the willing witness . . . factor[]" is a highly factual matter entrusted to the District Court, not a legal issue for mandamus. *In re Apple*, No. 20-104 (Dkt. 36), at 4 (explaining that that the principles of deference "apply with a particular force" to a District Court's evaluation of potential witnesses).

Here, there was "at least a plausible basis for the district court to find that these individuals may have relevant information," *id.* at 4–5—almost all of whom Apple failed to address in its Petition, such as the inventors. There was no clear abuse of discretion. *Id.*; *see also In re Apple Inc.*, 2020 U.S. App. LEXIS 18899, at *8 (explaining that "[w]hether individuals or organizations may have relevant

---

[7] For example, Apple's ███████ refers to a ███████ On information and belief, this refers to J.C. Jiminez, a former Apple developer who worked on app validation functionality and is believed to be located in the WDTX. *See* https://www.linkedin.com/in/jcjimenez1337 (listing Mr. Jiminez as residing in Austin, Texas, listing Apple Online Store as a project he worked on, and listing Mr. Jimenez as an inventor on U.S. Pat. No. 8,935,217) (accessed June 28, 2020); U.S. Pat. No. 8,935,217 (listing Mr. Jimenez as co-inventor and disclosing a system that validates digital assets, *e.g.,* apps, prior to distribution through an Online Store). This evidence is consistent with Apple's Austin-based employment of engineers whose work relates to the accused functionality.

information . . . are fact-intensive matters often subject to reasonable dispute" and that a District Court's decision will remain undisturbed if it meaningfully considers the factors and conducts a reasonable analysis).

### 2. The Court Did Not Hold That Uniloc's Choice of Forum Was a Distinct Factor

Apple incorrectly argues that the District Court held that Uniloc's choice of forum was a "distinct factor." The Court specifically held the opposite: "[a] plaintiff's choice of venue is not an independent factor in the venue transfer analysis, and courts must not give inordinate weight to a plaintiff's choice of venue." SAppx3 (citing *Volkswagen II*, 545 F.3d at 313). The Court did not err.

### 3. The Court Reasonably Found That the Compulsory Process Factor Was Neutral

The District Court also found that this factor was neutral. SAppx22–24. The Court sided with Apple in many parts of it analysis, including that the New York-based witnesses do not affect this factor. SAppx23–24. Ultimately, the Court weighed the location of certain Fortress employees located in the NDCA that sit on Uniloc's Board against witnesses from Flextronics and Huawei that are subject to compulsory process in the WDTX.[8] SAppx24. In that analysis, the Court concluded that the factor was neutral. SAppx24.

---

[8] Huawei has its U.S. headquarters in Texas. SAppx105–106.

Apple's Petition rests on the same incorrect premise as above: "that no third-party witnesses are within the subpoena power of the Western District of Texas." Pet. at 28.  That assertion is wrong, as reflected in the District Court's analysis regarding Flextronics and Huawei (neither of whom Apple addresses).  Apple's Petition also presumed that the District Court's analysis focused on the inventors and prosecuting attorneys, but the Court's actual opinion agreed with Apple that those witnesses "have no effect on this factor."  SAppx23–24.  The Court also afforded little weight to Flextronics on this factor, SAppx24, a finding that Apple cannot complain about here.

All that is left in Apple's Petition is Fortress.  Pet. at 26–27.  But even there, the District Court agreed with Apple that those witnesses favored transfer, "giv[ing] some weight to the presence of the Fortress employees in NDCA."  SAppx24. However, the Court recognized—and Apple ignores—that the Fortress employees did not tip this factor decisively because "it seems a lot less likely that the employees would be unwilling to testify at a trial concerning Uniloc."  SAppx24.  Indeed, each employee provided unchallenged declarations stating that "if the trial of this lawsuit is held in Texas and the parties request my appearance as a witness, I am willing to appear in person, without being served with a subpoena, to testify at trial and such live appearance will not be inconvenient for me."  SAppx108–112.

The District Court's analysis regarding Fortress was well within its broad

21

## CONFIDENTIAL MATERIAL OMITTED

discretion. *See, e.g.*, *In re Apple*, No. 20-104 (Dkt. 36), at 4 (explaining that that the principles of deference "apply with a particular force" to a District Court's evaluation of "whether an individual is deserving of consideration" in the compulsory process factor). And, again, Apple does dispute those findings here.

The District Court was also within its discretion to find that Huawei—a party that Apple has never addressed—had about equal weight as the Fortress employees. As a ███████ Huawei may have information relevant to damages under *Georgia Pacific*. 318 F. Supp. 1116 (S.D.N.Y. 1970). Uniloc's Fortress-based board members are unlikely to have any relevant testimony in this case, similar to Apple's own board members. And Apple's Petition does not identify any relevant testimony those Fortress witnesses might provide. The Court was thus within its discretion to weigh the two parties equally, findings that Apple does not address on appeal.[9]

> **4.     The Court Reasonably Found That the Location of Sources of Proof Only Slightly Weighed in Favor of Transfer**

The District Court concluded that this factor only slightly weighed in favor of transfer. SAppx15–22. The Court divided its analysis into two parts: the location of witnesses and the location of documents. On the former, the Court found that the location of party witnesses weighed in favor of transfer, crediting Mr. Jaynes's

---

[9] Uniloc also discovered a former Apple engineer believed to located in the WDTX (J.C. Jiminez). This further confirms that this factor does not mandate transfer.

declaration.  SAppx20–21.  On the latter, the Court found that the factor was neutral based on its weighing of Uniloc's documentation in Texas and relevant Apple sources of proof located in the District against proof Apple identified as located in the NDCA.  SAppx19–20.  Analyzing the full record, the Court concluded that it slightly weighed in favor of transfer.  SAppx21–22.

Apple does not expose error in the District Court's analysis.  It instead begins with the same incorrect assertions: "all the relevant Apple documents are in the Northern District of California" and "there are no relevant sources of proof in the Western District of Texas."  Pet., at 29–30.  The District Court's analysis shows that those assertions are incorrect.  And factual disagreements with the Court over what documents may be relevant do not show clear error.

Apple has numerous sources of proof in the WDTX.  One example, as the District Court found—and Apple has never disputed—is that Apple's Austin location houses documents related to the royalties arising from Apple's relationship with app developers (as well as reporting for all of Apple).  SAppx20 (citing SAppx117, at 133:33–134:15).  These documents are relevant to many issues, including at least Uniloc's damages claim.

Uniloc contends that a significant benefit Apple derives from the accused functionality is its ability to provide an ecosystem in which third-party app developers engage users with new apps and updates that are compatible with (and

take advantage of) the most up-to-date versions Apple's operating systems (*e.g.*, iOS).[10]  The financial value of that benefit is reflected, at least in part, in the revenue that Apple receives from selling apps via the App Store.  Apple pays a portion of that revenue as royalties to app developers.  Those records (and their associated potential witnesses) are in the WDTX. It also appears that Apple's financial relationship with its app developers flows through Apple's WDTX campus.[11]  And Apple has never asserted otherwise.

Second, Apple's content delivery (*e.g.*, app update delivery) proof is located in the WDTX.  Apple has never contested that fact.  Nor has it asserted that this proof resides in the NDCA.  It instead asserts that this proof is not relevant.  That assertion is incorrect, and simply disagreeing with the District Court on relevancy findings does not constitute a clear abuse of discretion.  And a number of the content delivery servers themselves (along with records and other potential witnesses) reside in the Dallas area—significantly closer to the WDTX than the NDCA.  SAppx20.

Third is Flextronics.  Apple has never disputed Flextronics's presence in the WDTX, and it has not asserted that Flextronics proof resides in the NDCA.  And

---

[10] *See, e.g.*, https://developer.apple.com/app-store/app-updates/.  Apple makes no showing that its AppleCare documents, which instruct users on how to update applications (inducing one type of infringing use), are located in the NDCA.

[11] *See, e.g.*, https://help.apple.com/app-store-connect/en.lproj/static.html (instructing app developers to submit tax documentation to Apple's Austin campus).

Apple's Flextronics objection is nothing more than a disagreement over relevance. That does not demonstrate clear error.

Apple ultimately asserts that transfer is mandatory because it can identify some Uniloc proof in California and some Apple proof in the NDCA. Pet. at 29–30. The existence of that proof, however, does not erase the other proof found in and near the WDTX, including other proof from Uniloc, Apple and Flextronics. And while Uniloc may have sources of proof in California, it also has hard-copy documentary evidence and witnesses in Texas. The District Court, viewing the full picture, could reasonably find that factor only slightly favored transfer. Apple has not shown clear error in that analysis.

### 5. The Court Reasonably Found That Judicial Economy Weighed Heavily Against Transfer

The District Court concluded that judicial economy heavily weighed against transfer. SAppx29–30. Apple's argument below was that there are other cases between the parties pending in NDCA as a result of prior transfers. But those cases involve different patents and different technologies. None of those cases involve the '088 Patent or the same accused functionality, and Apple's Petition does not contend otherwise. At best, Apple claims that there is overlap with the accused products, but not the specific accused functionality within these complex products. As the District Court explained, "since the asserted patent is unique to this case, the documents and source code relevant to proving infringement would also be unique." SAppx29. The

Court acted within its discretion on this factor.  *See In re ASM Int'l, N.V.*, 774 F. App'x 650, 652 (Fed. Cir. 2019) (non-precedential) (holding that "the district court exercised its considerable discretion to not transfer because this case involves different asserted patents, claim terms, and technology than are at issue in the Northern California action[s]")  (denying petition raised under the first-to-file rule).

Apple asserts that, even though the patents and technology are different, transfer is still required because the same general products that are at issue in this case are also at issue in the NDCA cases (*e.g.*, iPhones).  That is not a basis to force transfer of this case on mandamus when it is undisputed that different patents (and therefore different technology) are at issue.  There are also patent cases against Apple in the WTDX that pertain to iPhones as well, *viz.*, *Fintiv* and *STC.UNM*.

Moreover, there is no evidence that transfer would serve judicial economy even if there were subject matter overlap between this case and the NDCA cases. There is no evidence that this case would be consolidated with any of the NDCA cases (which are stayed or at various stages).  Nor is there any guarantee, as Apple admits, that this case would even be assigned to a judge in the NDCA with experience with the Uniloc/Apple cases.  Pet. at 33.  The prior transferred cases ended up before ten different district judges (one case was later dismissed), and it is unknown which of the 19 active judges in that District would preside over this case. All but three cases have since been stayed, and each of the three active cases is before

a different judge. All of this weighs against holding, on mandamus review, that the District Court improperly weighed this factor. *See In re Google Inc.*, No. 2017-107, 2017 U.S. App. LEXIS 4848, at *6 (Fed. Cir. Feb. 23, 2017) (holding that "the district court's basis for any purported gains to its institutional knowledge . . . [was] untenable" because the judge with the institutional knowledge from the prior case was not assigned to the instant case because he had since retired).

Further, few of the transferred NDCA cases are active, and none of them have a trial date. Most have been stayed pending *Inter Partes* Review, unlike this case which has already survived one such challenge. And even the few active cases "do not have a trial date set whereas this court has a trial date set." SAppx29. This case is currently set for trial in March and will therefore be resolved long before any of the transferred NDCA cases. The District Court was therefore correct in finding that this factor weighs against transfer.

Apple makes a weak attempt to find clear error. It asserts—with new evidence it did not submit before the District Court, *e.g.*, Appx417, Appx472–476—that a few judges in the NDCA are familiar with some jurisdictional and discovery issues in the other cases. Pet. at 32. But, as Apple conceded, there is no guarantee that this case would end up before a judge with any prior Uniloc/Apple experience—let alone one of the judges that have dealt with jurisdictional or discovery issues. And Apple's Petition failed to identify any duplicative issues that could be worthy of forcing

transfer of this case on mandamus review.  In contrast, the Court here has already construed the '088 Patent—work that would be duplicated if the case were transferred.  SAppx29.  And the Court has already resolved threshold discovery disputes relating to the Protective Order.

In a final attempt, Apple argues clear error because the NDCA cases are assigned to the same *mediator*, Pet. at 33, again relying on new evidence it did not present below, *e.g.*, Appx343–346.  Apple cites no authority that this fact carries any weight in the Section1404(a) analysis.  It is not a basis to issue a writ of mandamus.  There was no clear error.

### C.  Apple Does Not Show Error in the District Court's Analysis of the Public-Interest Factors

#### 1.  The Court Reasonably Concluded That the Local Interest Factor Was Neutral

The District Court concluded that the local interest factor was neutral, analyzing Uniloc, Apple, and Flextronics.  SAppx32–33. For Apple, the Court concluded that this factor was neutral due to its substantial presence in both the NDCA and the WDTX (SAppx32) (internal citation omitted):

> Apple has substantial presences in both NDCA and WDTX, so both districts have a significant interest in this case. As such, Apple's presence and its potential witnesses in both districts indicate that WDTX has a similar localized interest to NDCA with respect to Apple. Moreover, as previously discussed, Apple's presence has *significantly* increased in this District, making the previous orders granting Apple's transfer motions

28

> unpersuasive. Finally, WDTX has a significant localized interest because of the state and local tax benefits received by and pledged to Apple to build a second campus in Austin.

The Court concluded that the presence of Uniloc witnesses in the NDCA weighed in favor of transfer. SAppx33. Finally, the Court concluded that the presence of Flextronics in the District weighed slightly against transfer.[12] SAppx33. All told, the Court found that the factor was neutral.

Apple's Petition asserts that "[a]ny finding that the local-interest factor weighs against transfer would require legal error." Pet., at 35–36 (emphasis added). But the District Court did not make that finding. And, although not explained in its Petition, Apple merely disagrees with the District Court's conclusions after it weighed the evidence. Apple does not allege a failure to weigh the evidence. Indeed, the District Court credited Apple for most of the evidence considered under this factor. But the Court ultimately concluded that the factor was neutral due to Apple's substantial presence in the district and that of Flextronics's. At that same time, the Court did not credit Uniloc's presence in Texas and found that the location of Uniloc witnesses actually favored transfer. Such an analysis is entirely reasonable and within the Court's discretion.

---

[12] The Court also noted that even if it excluded Flextronics from the calculus, "this factor would be neutral in terms of transfer." SAppx33.

While Apple asserts that the accused functionality was exclusively designed in the NDCA (which does not appear fully accurate), that statement does not nullify the local public interest of the WDTX—where Apple employs around 8,000 people, sells Accused Products, where Flextronics assembles an Accused Product, where Apple's engineers work on the infrastructure to deploy the infringing functionality, where Apple has retail store employees and customer support personnel to instruct and train users on how to use the accused functionality, where Apple processes revenue tied to infringing functionality, and Apple receives tax benefits.    The District Court did not err in finding this factor neutral.

### 2.    The Court Reasonably Found That the Time to Trial Factor Weighed Against Transfer

Finally, the District Court found that the time-to-trial factor weighed against transfer.    SAppx30–31.    The time to trial in the WDTX historically has been "somewhat comparable" to the time to trial in the NDCA, around 32 months from filing.    SAppx31.    But the Court set this case on a faster schedule—"the prospective time from filing to trial is 18.4 months."    SAppx31.    The time to trial is thus significantly faster than the comparable time in the NDCA.    Indeed, the active Uniloc-Apple cases in NDCA still do not have a trial date.    SAppx29.    The District Court was within its discretion to find that this factor weighed against transfer.

Apple's Petition does not engage with the District Court's analysis, except to call Judge Albright's trial setting in this case "entirely speculative,"    Pet. at 38.    A

firm trial setting is anything but speculative.  It is speculative, if this case were transferred, which of nineteen NDCA judges would preside over the case and when the case would be tried.  The aggregate statistics in the NDCA indicate it would take almost three years to get to trial—almost twice as long as the District Court's schedule.  There is no clear error on this record.

Recognizing as much, Apple submits *five* new exhibits in its Petition that it never submitted below, *e.g.*, Appx483–519, to claim that Judge Albright's docket will eventually get overloaded.  Besides being procedurally improper, it says nothing about whether the District Court's trial date in this case will hold.  Indeed, while Apple now complains to this Court that the District Court has put this case on an "unusually aggressive pace," Pet. at 37, Apple agreed to the March, 2021 trial date before the District Court and did not raise any objection.  *See Uniloc 2017 LLC v. Apple Inc.*, No. 6:19-CV-00532-ADA (Dkt. 64) (W.D. Tex. June 1, 2020) (submission of Amended Agreed Scheduling Order).

Lastly, Apple raises a new argument: that Uniloc is not harmed by a slower time to trial because it is allegedly a non-practicing entity.  Pet. at 40.  This is not a factor in the analysis.  And the Fifth Circuit's ***public interest*** factor regarding court congestion is about the ***public's interest*** in ensuring efficient resolution of litigation, not a litigant's private interest.  Apple fails to show clear error.

31

### D.    The District Court Was Well Within Its Discretion to Deny Apple's Motion in View of These Factual Findings

Apple had a significant burden before the District Court: to show that it would be clearly more convenient to try this case in the NDCA.  And on mandamus review, it had to show that the District Court clearly abused its discretion when it found otherwise—that "the district court's decision amounted to a failure to meaningfully consider the merits of the transfer motion." *In re Apple Inc.*, No. 2020-115, 2020 U.S. App. LEXIS 14317, at *1-2 (Fed. Cir. Apr. 22, 2020) (non-precedential) (collecting authority).

Apple failed to meet that burden for the factors its Petition addressed.  And it did not challenge the Court's discretionary weighing of the various factors in combination to determine if transfer was warranted in this case.  Apple only argues that certain individuals and sources of proof were relevant.  But "[w]hether individuals or organizations may have relevant information and whether a certain forum has a localized connection to the relevant conduct and activities in a case are fact-intensive matters often subject to reasonable dispute." *Apple*, 2020 U.S. App. LEXIS 18899, at *8.  When a District Court meaningfully considers the factors and conducts a reasonable analysis, this Court will not disturb the decision. *See id*.  That is what happened here, and Apple's Petition should be denied.

## CONCLUSION

For the reasons above, Uniloc respectfully requests that the Court deny Apple's Petition for a Writ of Mandamus.

Dated: July 1, 2020                         Respectfully submitted,

                                            By: /s/ Christian Hurt
                                            William E. Davis, III
                                            Texas State Bar No. 24047416
                                            bdavis@bdavisfirm.com

                                            Christian J. Hurt
                                            Texas State Bar No. 24059987
                                            churt@bdavisfirm.com

                                            **The Davis Firm, PC**
                                            213 N. Fredonia Street, Suite 230
                                            Longview, Texas 75601
                                            Telephone: (903) 230-9090
                                            Facsimile: (903) 230-9661

                                            ***Counsel for Respondent Uniloc
                                            2017, LLC***

Misc. No. 2020-135

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

**In re Apple, Inc.**

## CERTIFICATE OF SERVICE

I, Christian John Hurt, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

On **July 1, 2020,** I caused the foregoing **Uniloc 2017 LLC's Non-Confidential Response to Apple Inc.'s Petition for Writ of Mandamus** to be filed with the Clerk of Court using the CM/ECF System, which will serve via e-mail notice of such filing to all counsel registered as CM/ECF users.

In addition, a courtesy copy will be mailed to:

Hon. Alan D. Albright
U.S. District Judge
U.S. District Court for the
Western District of Texas
800 Franklin Avenue, Room 301
Waco, Texas 76701

July 1, 2020                                    /s/ Christian John Hurt
                                                Christian John Hurt
                                                *Counsel for Plaintiff-Respondent*

# CERTIFICATE OF COMPLIANCE

1.      This response complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2), because it contains 7294 words excluding the parts of the brief exempted by Federal Circuit Rule 27.

2.      This response complies with the limitations set forth in Fed. Cir. R. 27(m) and contains 4 words, including numbers, marked as confidential.

3.      This motion complies with the typeface requirements of Federal Rule of Appellate Procedure 32(5)(A)(B), because it has been prepared in a proportionally spaced typeface using Microsoft Word 2020 for Mac in Times New Roman 14 point font.


Date: July 1, 2020                          /s/ Christian John Hurt
                                            Christian John Hurt
                                            *Counsel for Plaintiff-Respondent*