**Misc. No. 2020-135**

# United States Court of Appeals
# for the Federal Circuit

**IN RE APPLE, INC.**

On Petition for a Writ of Mandamus from the United States District Court
for the Western District of Texas, Case No. 6:19-CV-00532-ADA,
Judge Alan Albright

## UNILOC 2017 LLC'S PETITION FOR REHEARING EN BANC

WILLIAM E. DAVIS, III
DAVIS FIRM PC
213 N. Fredonia Street
Suite 230
Longview, Texas 75601
(903) 230-9090
bdavis@bdavisfirm.com
*Counsel for Petitioner*

CHRISTIAN JOHN HURT
DAVIS FIRM PC
213 N. Fredonia Street
Suite 230
Longview, Texas 75601
(903) 230-9090
churt@bdavisfirm.com
*Counsel for Petitioner*

DECEMBER 9, 2020

FORM 9. Certificate of Interest

Form 9 (p. 1)
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

| | |
|---|---|
| **Case Number** | 2020-135 |
| **Short Case Caption** | In re Apple Inc. |
| **Filing Party/Entity** | Uniloc 2017 LLC |

**Instructions:** Complete each section of the form.  In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.  **Please enter only one item per box; attach additional pages as needed and check the relevant box**.  Counsel must immediately file an amended Certificate of Interest if information changes.  Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 12/09/2020

Signature:  /s/ Christian John Hurt

Name:  Christian John Hurt

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☐ None/Not Applicable |
| Uniloc 2017 LLC | | CF Uniloc Holdings, LLC |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

FORM 9. Certificate of Interest

**4. Legal Representatives.**  List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4).

☐     None/Not Applicable          ☐     Additional pages attached

| | | |
|---|---|---|
| Debra Coleman, Davis Firm, P.C. | Edward K. Chin, Davis Firm, P.C. | Rudolph Fink, IV, Davis Firm, P.C. |
| Ty Wilson, Davis Firm, P.C. | | |
| | | |

**5. Related Cases.**  Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal.  Do not include the originating case number(s) for this case.  Fed. Cir. R. 47.4(a)(5).  See also Fed. Cir. R. 47.5(b).

☑     None/Not Applicable          ☐     Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**6. Organizational Victims and Bankruptcy Cases**.  Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).  Fed. Cir. R. 47.4(a)(6).

☑     None/Not Applicable          ☐     Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# **TABLE OF CONTENTS**

CERTIFICATE OF INTEREST

TABLE OF AUTHORITIES.................................................................. iii

STATEMENT OF COUNSEL..............................................................vi

INTRODUCTION AND BACKGROUND ...............................................1

ARGUMENT .....................................................................................3

    I.     Mandamus Review is Extremely Deferential .......................................3

          A. Mandamus Applies Only in Extraordinary Cases ...........................3

          B. Mandamus is Ill-Suited for Discretionary Issues Like Transfer......4

    II.    The Majority Exercised De Novo Review Instead of the
          Extremely Deferential Mandamus Review .........................................5

          A. The Majority Improperly Collapsed the Mandamus Test...............6

          B. The Majority Granted Mandamus on Issues Never Raised
             Below ........................................................................................7

          C. The Majority Granted Mandamus on New Law..............................8

          D. The Majority Failed to Defer to the District Court's
             Application of Regional-Circuit Law ...............................................9

          E. The Majority Imposed Its Judgment Instead of Deferring to
             the District Court .........................................................................10

          F. The Majority Eroded the District Court's Discretion to
             Manage Its Docket ......................................................................12

    III.   Maintaining Deference is an Issue of Exceptional Importance ..........14

          A. Deference Ensures That District Courts Have the Power to Find

Facts and Determine Credibility .....................................................14

B. Destroying Deference Encourages Inefficient Litigation ..............16

CONCLUSION .................................................................................................17

ADDENDUM

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

## Cases

*Allied Chem. Corp. v. Daiflon, Inc.*
    449 U.S. 33 (1980) ...................................................................4, 5

*All States Freight, Inc. v. Modarelli*
    196 F.2d 1010 (3d Cir. 1952) .....................................................16

*Anderson v. Bessemer City*
    470 U.S. 564 (1985) ...................................................................11

*Bankers Life & Cas. Co. v. Holland*
    346 U.S. 379 (1953) ............................................................4, 5, 13

*Cheney v. U.S. Dist. Court*
    542 U.S. 367 (2004) .....................................................................6

*Fowler v. Butts*
    829 F.3d 788 (7th Cir. 2016) .......................................................14

*Highmark Inc. v. Allcare Health Mgmt Sys., Inc.*
    572 U.S. 559 (2014) .....................................................................6

*Hilton v. Braunskill*
    481 U.S. 770 (1987) ...................................................................13

*In re Adobe*
    823 F. App'x 929 (Fed. Cir. 2020) .............................................7, 8

*In re Apple, Inc.*
    2019 U.S. App. LEXIS 39376 (Fed. Cir. Dec. 20, 2019) .......11, 12

*In re Apple, Inc.*
    818 Fed. App'x 1001 (Fed. Cir. 2020) ...................................11, 12

*In re Dropbox, Inc.*
    814 F. App'x 598 (Fed. Cir. 2020) .............................................7, 8

*In re Google Tech. Holdings LLC*
 --- F.3d ---, No. 19-1828 (Fed. Cir. 2020)........................................7

*In re Innotron Diagnostics*
 800 F.2d 1077 (Fed. Cir. 1986).......................................................2

*In re Lloyd's Register N. Am., Inc.*
 780 F.3d 283 (5th Cir. 2015)..........................................................10

*In re TS Tech. USA Corp.*
 551 F.3d 1315 (Fed. Cir. 2008).......................................................2

*In re Vistaprint Ltd.*, 628 F.3d 1342
 628 F.3d 1342 (Fed. Cir. 2010)......................................................14

*In re Volkswagen of Am., Inc.*
 545 F.3d 304 (5th Cir. 2008)...........................................................9

*Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*
 342 U.S. 180 (1952).......................................................................14

*Landis v. N. Am. Co.*
 299 U.S. 248 (1936).......................................................................13

*Mohawk Indus. v. Carpenter*
 558 U.S. 100 (2009)....................................................................3, 4

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*
 572 U.S. 545 (2014).........................................................................6

*Panduit Corp. v. All States Plastic Mfg. Co.*
 744 F.2d 1564 (Fed. Cir. 1984).......................................................9

*Piper Aircraft Co. v. Reyno*
 454 U.S. 235 (1981).......................................................................10

*Richardson-Merrell, Inc. v. Koller*
 472 U.S. 424 (1985).........................................................................4

*Stewart Org., Inc. v. Ricoh Corp.*
487 U.S. 22 (1988) ...................................................................4

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*
137 S. Ct. 1514 (2017) ...........................................................16

*Teva Pharms. USA v. Sandoz, Inc.*
135 S. Ct. 831 (2015) ...............................................................6

*United States v. Alaniz*
726 F.3d 586 (5th Cir. 2013) ..................................................11

*VanDesande v. United States*
673 F.3d 1342 (Fed. Cir. 2012) ................................................8

*Will v. Calvert Fire Ins. Co.*
437 U.S. 655 (1978) ...............................................................13

## Statutes & Rules

28 U.S.C. § 1400 ...................................................................16

28 U.S.C. § 1404 ......................................................... 2, 4, 5, 9

28 U.S.C. § 1406 .....................................................................5

## STATEMENT OF COUNSEL

Based on my professional judgment, I believe the panel decision is contrary to the following decision(s) of the Supreme Court of the United States or the precedent(s) of this court:

- *Mohawk Indus. v. Carpenter*, 558 U.S. 100 (2009)

- *Cheney v. U.S. Dist. Court*, 542 U.S. 367 (2004)

- *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988)

- *Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981)

- *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33 (1980)

- *Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379 (1953)

- *Panduit Corp. v. All States Plastic Mfg. Co.*, 744 F.2d 1564 (Fed. Cir. 1984)

Based on my professional judgment, I believe this appeal requires an answer to one or more precedent-setting questions of exceptional importance:

1. What level of deference should this Court afford on mandamus review of discretionary transfer decisions?

2. Can this Court find a clear abuse of discretion, amounting to a usurpation of judicial power, based on (1) arguments and law never presented to the district court; (2) creating new law instead of following applicable regional circuit law; (3) substituting its weighing of discretionary factors for the district court's; or (4) impinging on the district court's discretion to control its docket?

/s/ *Christian John Hurt*
Christian John Hurt
*Counsel for Petitioner*

## INTRODUCTION AND BACKGROUND

The Court should sit *en banc* to correct a split-panel decision that conflicts with Supreme Court decisions and this Court's precedent. The decision is the latest in a line of cases eroding trial courts' discretion to weigh facts, decide issues within their power, and manage their dockets, effectively converting them into special masters of this Court. With this decision, the Court drifts well beyond its authority to conduct limited review of discretionary matters and substitutes its own judgment on the application of law to facts for that of the trial court, something prohibited under a discretionary standard of review.

This petition concerns motions to transfer venue for convenience. This issue may not sound important, but it is. District courts decide between 170–440 convenience motions annually.[1] Many transfer denials come before this Court on mandamus. Convenience is now litigated on a level and at an expense that rivals summary judgment (*e.g.*, declarations, discovery, and evidentiary hearings).

But it was not always this way. For 26 years, this Court reviewed transfer decisions post-judgment, as its jurisdictional statute foreclosed the "authority to inject itself into the business-like elements of the administration of justice within the

---

[1] For context, this Court receives 300–600 <u>total</u> district-court appeals annually.

regional circuits," like transfer.[2]  It deferred to the discretion that Congress provides district judges in Section 1404(a): "For the convenience of parties and witnesses, in the interest of justice, a district court <u>may</u> transfer any civil action...."[3]

In December 2008, a shift occurred and this Court began routinely granting convenience-mandamus petitions.[4]  Today, the Court sees as many convenience petitions in one year as it used to see in ten.  This is out of step with other regional circuits.  Since 2008, this Court has issued over <u>seventy</u> mandamus decisions; the Fifth Circuit by comparison has issued <u>seven</u>.  And this Court grants the "exceptional remedy" of mandamus in approximately 1-out-of-3 petitions.

But this panel's split-decision goes beyond prior cases.  The majority found the judge, in a 34-page opinion following a 90-minute hearing, clearly abused his discretion, not because the judge failed to apply the law—but because the majority faulted how the judge applied the law and weighed the facts.  More problematic, the majority found errors on factual issues not raised before the judge and on law issuing after his opinion.  And the majority invaded district-court docket-management powers.  It criticized the judge for allowing substantive pre-trial work to continue

---

[2] *In re Innotron Diagnostics*, 800 F.2d 1077, 1083 (Fed. Cir. 1986) ("More troublesome are petitions seeking to overturn district court orders that would not necessarily frustrate this court's appellate jurisdiction[....], [such as] transfer of case to another district[.]").

[3] All emphases supplied unless otherwise noted.

[4] *In re TS Tech USA Corp.*, 551 F.3d 1315 (Fed. Cir. 2008).

during the pendency of the transfer motion, suggesting that convenience motions must take "top priority" and all other merits work must halt.

The majority exceeded its authority to review transfer denials with deference. It vitiated the judge's discretion to find that the transferee venue was not clearly more convenient than the present, proper venue—where the defendant maintains its second-largest headquarters, has 8,000-plus employees, has relevant witnesses and documents, is building its own hotel, and has a third-party make an accused product.

District courts are a vital part of the judiciary. Congress, the Supreme Court, and this Court recognize that district-court discretion is a boundary worth protecting. With all respect, the majority did not review the district court with deference but engaged in *de novo* review. This requires *en banc* review to preserve the authority that Congress and the Supreme Court vest in district courts.

## ARGUMENT

### I.    Mandamus Review is Extremely Deferential

#### A.    Mandamus Applies Only in Extraordinary Cases

Mandamus is the last-stop exception to "the general rule that a party is entitled to a single appeal, to be deferred until final judgment has been entered." *Mohawk*, 558 U.S. at 106 (citations omitted). Congress gave district courts the "primary responsibility to police the prejudgment tactics of litigants, and that the district judge can better exercise that responsibility if the appellate courts do not repeatedly

intervene to second-guess prejudgment rulings." *Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 436 (1985). Thus, "[p]ermitting piecemeal, prejudgment appeals [...] undermines 'efficient judicial administration' and encroaches upon the prerogatives of district court judges, who play a 'special role' in managing ongoing litigation." *Mohawk*, 558 U.S. at 106 (citations omitted). Mandamus is limited to "extraordinary circumstances—*i.e.*, when a[n]…order 'amount[s] to a judicial usurpation of power or a clear abuse of discretion[.]'" *Id.* at 111 (citation omitted). "There is no more deferential standard of review[.]" Dissent, at 2.

### B.    Mandamus is Ill-Suited for Discretionary Issues Like Transfer

"Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart*, 487 U.S. at 29 (citation omitted). "Where a matter is committed to discretion, it cannot be said that a litigant's right to a particular result is 'clear and indisputable,'" a predicate to issue mandamus. *Allied*, 449 U.S. at 36 (citation omitted).

Historically, mandamus was inappropriate for transfer orders. In *Bankers Life*, the Supreme Court held mandamus was unavailable to review a discretionary transfer order and reaffirmed that the remedy does not reach orders that "involve[]

4

no abuse of judicial power." 346 U.S. at 382.[5] The petitioner argued that mandamus should be used to correct an order that was wrong on the merits. *Id.*

The Court rejected the argument, holding mandamus is not a substitute for an appeal; it does "not run the gauntlet of reversible errors"; and it does not allow "every interlocutory order which is wrong [to] be reviewed." *Bankers Life*, 346 U.S. at 382–83. The Court recognized deference had a cost: it "assume[d] that… <u>the order of transfer…will give rise to a myriad of legal and practical problems as well as inconvenience</u>…but [held] Congress must have contemplated those conditions in providing that only final judgments are reviewable." *Id.* at 383; *see also Allied*, 449 U.S. at 35 ("Although a simple showing of error may suffice to obtain a reversal on direct appeal, to issue a writ of mandamus under such circumstances 'would undermine the settled limitations upon the power of an appellate court to review interlocutory orders.'") (citation omitted).

## II.    The Majority Exercised De Novo Review Instead of the Extremely Deferential Mandamus Review

The majority did not follow precedent safeguarding district-court discretion. The judge's 34-page order addressed each convenience factor, found facts, and weighed those facts against the convenience factors. It concluded, for example, that the presence of relevant witnesses and documents in the Western District of Texas

---

[5] *Bankers Life* involved Section 1406(a), which, like Section 1404(a), allows transfer "if it be in the interest of justice." 28 U.S.C. § 1406(a).

("WDTX") weighed against transfer. The majority disregarded those findings and substituted its own belief that the Northern District of California ("NDCA") would be more convenient, thereby disregarding the deference owed to the district court.

The dissent and commentators have rightly characterized this analysis as *de novo* review. Dissent, at 1.[6] This error requires *en banc* correction. *See, e.g.*, *Highmark Inc. v. Allcare Health Mgmt Sys., Inc.*, 572 U.S. 559 (2014) (reversing application of de novo review); *Teva Pharms. USA v. Sandoz, Inc.*, 135 S. Ct. 831 (2015) (same); *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 553 (2014) (reversing for "encumber[ing] the statutory grant of discretion"). The majority's lack of deference manifested itself in each error below.

## A. The Majority Improperly Collapsed the Mandamus Test

The majority committed a foundational error when it "reduc[ed]" the three-part mandamus test to only one factor—a clear-and-indisputable right to relief. Maj. at 3–4. The test is three parts: first, petitioner must demonstrate a clear-and-indisputable right to issuance of the writ; second, that the petitioner has no other adequate means to attain the relief; and third, that the writ is appropriate under the circumstances. *Cheney*, 542 U.S. at 380–381.

---

[6] *See, e.g.*, Federal Circuit Usurps Judge Albright's Judicial Power, *available at*. https://patentlyo.com/patent/2020/11/federal-albrights-judicial.html ("The majority [...] goes beyond even typical *de novo* review [...] on an issue that is traditionally fully within the district court's discretion.") (*PatentlyO*).

Ignoring the second and third parts eroded the district court's power. Considering the "no adequate means" factor would have allowed the judge to address arguments first raised on appeal and law issuing after his decision, *viz.*, *In re Adobe*, 823 F. App'x 929 (Fed. Cir. 2020)—as the same panel did in another case. *In re Dropbox, Inc.*, 814 F. App'x 598, 599 (Fed. Cir. 2020) (finding "no other adequate means" requirement unmet "[i]n light of this court's intervening decision in *Adobe*"). An "appropriateness" analysis would have considered Apple's conduct—petitioning before a written order issued, raising new issues in Reply, and never moving for reconsideration below based on its new issues.

### B.    The Majority Granted Mandamus on Issues Never Raised Below

The majority removed even the possibility of deferential review. It found error on grounds never raised below that the district court never had a chance to address. "The very word 'review' presupposes that a litigant's arguments have been raised and considered in the tribunal of first instance." *In re Google Tech. Holdings LLC*, --- F.3d ---, No. 19-1828, at 10 (Fed. Cir. 2020) (citation omitted).

For example, the majority held "[t]he district court misapplied the law to the facts of this case by <u>too rigidly</u> applying the 100-mile rule"[7] to three witnesses. Maj. Op. at 12. But Apple never addressed those witnesses below or in its petition, much

---

[7] *Infra*, p. 9.

less how the 100-mile rule applied. *See* Appx96–99 (Mot.); Appx187–194 (Uniloc Opp.); Appx204–207 (Reply); Appx235–295 (Hearing); Pet. at 18–24.

Additionally, the majority found error on other grounds not raised below, such as case progress, the trial date, and civil caseload statistics. *Compare, e.g.*, Maj. at 14–15 *with* Appx99–101 (failing to address those issues), Appx207 (same); *see also* Maj. at 8 (finding "[t]he district court legally erred in considering witnesses as 'sources of proof[,]'" even though Apple argued the opposite); Pet. at 30 (pointing to "several managers and a software engineer" as "sources of proof"); Appx93 (same); Maj. at 17–18 (finding error in the judge's finding the local-interest factor "neutral," even though "Apple's petition did not argue that it would be a clear abuse of discretion to find this factor neutral," Dissent, at 10).

## C.    The Majority Granted Mandamus on New Law

The majority also faulted the judge for not following *In re Adobe*, 823 F. App'x 929 (Fed. Cir. 2020). Maj. at 16. *Adobe* issued after the judge's written order, and furthermore concerned scheduling issues never raised. Appx99–101, Appx207. But the majority did not deny the petition to allow the district court to consider *Adobe*, as deference requires—especially since *Adobe* is non-precedential and would not bind the judge. *In re Dropbox, Inc.*, 814 F. App'x 598, 599–600 (Fed. Cir. 2020) (remanding "[i]n light of this court's intervening decision in *Adobe*"); *VanDesande v. United States*, 673 F.3d 1342, 1348 (Fed. Cir. 2012) ("As the trial court correctly

observed...[the case] was a nonprecedential opinion of this court, and therefore is not binding on subsequent decisions.").

### D.     The Majority Failed to Defer to the District Court's Application of Regional-Circuit Law

The majority failed to follow Fifth-Circuit law (its regional circuit) on the 100-mile rule.  Maj. at 3.  Because this Court has specialized jurisdiction, it must "apply the law as stated" by the regional circuit.  *Panduit*, 744 F.2d at 1574–75.  And "[w]here the regional circuit court has not spoken," the Court must "predict how that regional circuit would have decided the issue in light of the decisions of that circuit's various district courts, public policy, etc." *Id.*

The judge undisputedly applied the Fifth Circuit's 100-mile rule: "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses <u>increases in direct relationship</u> to the additional distance to be traveled." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 317 (5th Cir. 2008) (en banc).  But the majority impermissibly held that the 100-mile rule does not apply as stated when a witness is traveling by airplane.  Maj. at 12 (finding that the judge applied the rule "too rigidly.")  Given the plain strictness of the Fifth Circuit's rule, the majority erred.

The majority likewise improperly found error solely based on non-Fifth-Circuit authority: cases from this Court or other circuits.  *See, e.g.*, Maj. at 12 (witness convenience); *id* at 15–18 (judicial economy, court congestion, and local

interest).  The majority did not predict how the Fifth Circuit would rule on these questions.  Nor did it defer to how courts within the Fifth Circuit have addressed those issues.  Rather, it created its own law.

Last, the majority failed to follow strict Fifth-Circuit law holding mandamus inappropriate on even reversable error.  *In re Lloyd's Register N. Am., Inc.*, 780 F.3d 283, 290 (5th Cir. 2015) ("In recognition of the extraordinary nature of the writ, we require more than showing that the court misinterpreted the law, misapplied it to the facts[….] even reversible error by itself is not enough").

### E.    The Majority Imposed Its Judgment Instead of Deferring to the District Court

With the deference safeguards removed, the majority improperly "substituted its own judgment for that of the District Court."  *Piper*, 454 U.S. at 267 (reversing appellate court).  The majority did not find that the judge failed to analyze the factors or that his analysis was unreasonable.  That should have ended the inquiry: "where the court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference."  *Id.* at 257.  The majority instead found that the judge's errors were "misapplication[s] of law to fact" that he had "no discretion to make."  Maj. at 20.  But a discretionary review necessarily means that a judge has discretion to apply the facts to the law, even if the reviewing court disagrees with those findings.  *See Lloyd's*, 780 F.3d at 290.

10

Lack of deference pervades the majority opinion. For example, the majority found:

> As to the CDN servers in Dallas, Texas, it is unclear why these servers are entitled to any weight, particularly given that the district court neither mentioned nor gave weight to these CDN servers in its analysis….

Maj., at 19. But, as the dissent observed:

> This is untrue. The district court referenced Apple's CDN servers, CDN engineers and Apple's financial accounting activities throughout its opinion….

Dissent, at 8. That is not deferential review. *Anderson v. Bessemer City*, 470 U.S. 564, 574 (1985) ("Where there are two permissible views of the evidence, the factfinder's choice…cannot be clearly erroneous.").

The majority also neither contested nor addressed evidence that supported the judge's findings. *See, e.g.*, Dissent at 2–3 (discussing evidence). Deference requires considering the whole record. *United States v. Alaniz*, 726 F.3d 586, 618 (5th Cir. 2013) ("A factual finding is not clearly erroneous if it is plausible in light of the record as a whole.") (citation omitted).

This Court's recent denials of Apple mandamus petitions in *Fintiv* and *STC.UNM* highlight the lack of deference here. *In re Apple, Inc.*, 2019 U.S. App. LEXIS 39376 (Fed. Cir. Dec. 20, 2019) (*Fintiv*); *In re Apple, Inc.*, 818 Fed. App'x 1001 (Fed. Cir. 2020) (*STC.UNM*). Both petitions originated from this same judge, contained a similar record and findings, and raised similar attacks. Both were

denied.  The difference?  Deference.  *STC.UNM*, 818 F. App'x at 1004 (reviewing if the court "meaningfully considered" the factors and "reasonabl[y]" balanced them) (citation omitted); *Fintiv*, 2019 U.S. App. LEXIS 39376, at *6 (determining "there was at least a plausible basis" for the findings).  *En banc* consideration is necessary to secure the uniformity of the court's application of deferential review.

## F.     The Majority Eroded the District Court's Discretion to Manage Its Docket

The majority also did not defer to the judge's caseload management.  It imposed its view that district courts should stay proceedings while a convenience-transfer motion is pending.  It faulted the court for "barrel[ing] ahead on the merits" while drafting a written order.  Maj. at 5.  It held that "once a party files a transfer motion, disposing of that motion should unquestionably take top priority."  *Id.* Apple and others have subsequently characterized that holding as requiring a stay. *Uniloc 2017 LLC v. Apple*, No. 6:19-CV-532 (W.D. Tex.), Dkt. 106, at 2 (Apple's Motion to Stay) (characterizing holding as "the court should not move forward with other substantive activity before addressing transfer"); *10 Tales, Inc. v. TikTok, Inc.*, No. 6:20-CV-810 (W.D. Tex.), Dkt. 27, at 2–3 ("Defendant requests…staying all other substantive deadlines…until the Court rules on…motion to transfer….").

This holding was in error.  How a court manages its cases is unrelated to the convenience factors.  The majority's precedent impinges on a court's core power to "control the disposition of the causes on its docket with economy of time and

effort[.]" *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936). It improperly uses mandamus to "actually control the decision[s] of the trial court." *Bankers Life*, 346 U.S. at 383; *see also Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 661 (1978) (holding "writ of mandamus impermissibly interfered with the discretion of a district court to control its own docket").

The court also acted reasonably. A stay assumes that a mandamus petition will be filed and granted. *See Hilton v. Braunskill*, 481 U.S. 770, 776 (1987) (explaining stay requires "a strong showing" that the appellant is "likely to succeed on the merits"). A convenience-based stay only causes delay, postponing discovery necessary regardless of where trial occurs. And few patent cases reach trial—most resolve within one year of filing, as shown using Federal Judiciary Center data:



Litigants should not be able to stay litigation in forums they dislike merely through filing a convenience motion. Dissent, at 3 (noting petition was "based almost entirely on ad hominem attacks"). That a defendant may perceive a forum to show "hospitality to patents" is "hardly a worthy or wise basis for fashioning rules of procedure." *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 184–85 (1952) (declining to credit attacks "impl[ying] a lack of discipline and of disinterestedness on the part of the lower courts").

## III.    Maintaining Deference is an Issue of Exceptional Importance

### A.    Deference Ensures That District Courts Have the Power to Find Facts and Determine Credibility

Deferential standards reflect "a longstanding recognition" that trial judges are better positioned to assess transfer because they have "a superior opportunity" to familiarize themselves with the "nature of the case and the probable testimony at trial." *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010). Deference also reflects caution for the uncertainties of a complex transfer analysis made early in a case. *See Fowler v. Butts*, 829 F.3d 788, 792–93 (7th Cir. 2016) ("A request for interlocutory review may come too early in a case [....] Factual or legal uncertainty means no mandamus.").

Defendants' transfer incentives highlight the need for this caution. The NDCA—the requested destination—reportedly has a patentee win-rate materially

lower than other major districts.[8]  Since 2008, petitioners have sought transfer to the NDCA <u>as much as the next ten forums combined</u>.

District courts are best positioned to assess credibility in view of these incentives.  Apple's amicus Roku, for example, told this Court that the same judge erred in denying Roku's transfer because "all of Roku's personnel are located in Northern California."  Dkt. 56, at 14.  Trial exposed that claim as untrue: "Roku's first witness was an executive based in Austin" who "talked, in part, about how important West Texas is to the company."[9]

Apple similarly has Austin-based employees who likely would serve as Apple witnesses in a Texas trial.  It seems unlikely that a trial in a venue where Apple has its second-largest headquarters would be inconvenient.   And observers have recognized that Apple's motion was for strategic reasons, not convenience:

> The obvious background to this case is that Apple believes it will have
> a better outcome of the case, and with more significant delays, if it is
> assigned to a judge in the Northern District of California rather than

---

[8] *See* Mark Lemley, *Where to File Your Patent Case*, *available at* https://papers.ssrn.com/sol3/papers.cfm?abstract_id=1597919 (showing patentee win rates for NDCA-26%; CDCA-36.4%; DDE-45.3%; EDTX-40.3%; WDTX-33.3%); *see also* https://search.docketnavigator.com/patent/binder/298255/4 (showing patent-challenger win rates for NDCA-90.27%; CDCA-72.73%; NDCA-77.19%; EDTX-69.16%; and WDTX-83.33% for non-ANDA cases from 2016–2020).

[9] *Takeaways From the MV3 v. Roku Trial*, *available at* https://www.winston.com/en/thought-leadership/mike-tomasulo-provides-takeaways-during-mv3-v-roku-trial.html.

Judge Albright. The *convenience* argument is simply a pretext on that front.[10]

The uncertainty surrounding convenience—hypothetical witnesses and evidence at trial—supports deferential review.

### B.    Destroying Deference Encourages Inefficient Litigation

Convenience-transfer mandamus has become a fixture in patent cases. Each year, judges decide approximately 170–440 convenience motions, and many denials reach this Court.[11] This Court, since 2008, grants about 30% of convenience-mandamus petitions—this year's grant rate is over 50%.[12] Converting exceptional relief into expected relief has created an expensive "first, prolonged litigation to determine the place where a case is to be tried" before reaching the merits. *All States Freight, Inc. v. Modarelli*, 196 F.2d 1010, 1011–1012 (3d Cir. 1952).

Patent venue is narrower than when the Court began granting mandamus petitions in 2008. *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514 (2017). This precedential opinion—the first on this issue since February 2016—borders on circumventing Congress's venue preferences, reflected in Section 1400(b)'s "regular and established place of business" requirement. And the majority's lack of deference will encourage additional petitions. This decision is the

---

[10] S*ee PatentlyO*, supra n.6 (emphasis in original).
[11]    *See*    https://search.docketnavigator.com/patent/binder/240822/12    (showing statistics from 2008-12).
[12] Manual count of decisions from the Court's website and Lexis.

vehicle to restore this Court's limited, deferential role and return power to the district courts.

## CONCLUSION

Uniloc respectfully requests that the Court grant this petition.

Dated: December 9, 2020                    Respectfully submitted,

                                           By: /s/ Christian John Hurt
                                           William E. Davis, III
                                           Texas State Bar No. 24047416
                                           bdavis@bdavisfirm.com

                                           Christian John Hurt
                                           Texas State Bar No. 24059987
                                           churt@bdavisfirm.com

                                           **THE DAVIS FIRM, PC**
                                           213 N. Fredonia Street, Suite 230
                                           Longview, Texas 75601
                                           Telephone: (903) 230-9090
                                           Facsimile: (903) 230-9661

                                           ***Counsel for Petitioner***
                                           ***Uniloc 2017 LLC***

# ADDENDUM

# United States Court of Appeals for the Federal Circuit

───────────────

**IN RE: APPLE INC.,**
*Petitioner*

───────────────

2020-135

───────────────

On Petition for Writ of Mandamus to the United States District Court for the Western District of Texas in No. 6:19-cv-00532-ADA, Judge Alan D. Albright.

───────────────

## ON PETITION AND MOTION

───────────────

MELANIE L. BOSTWICK, Orrick, Herrington & Sutcliffe LLP, Washington, DC, argued for petitioner. Also represented by ABIGAIL COLELLA, New York, NY; MELANIE HALLUMS, Wheeling, WV; JOHN GUARAGNA, DLA Piper US LLP, Austin, TX.

CHRISTIAN JOHN HURT, The Davis Firm, P.C., Longview, TX, argued for respondent Uniloc 2017 LLC. Also represented by WILLIAM DAVIS.

───────────────

Before PROST, *Chief Judge*, MOORE and HUGHES, *Circuit Judges*.

Order for the court filed by *Chief Judge* PROST.

Dissent filed by *Circuit Judge* MOORE.

PROST, *Chief Judge*.

# O R D E R

Apple Inc. petitions this court for a writ of mandamus directing the United States District Court for the Western District of Texas ("WDTX") to transfer the underlying patent infringement suit to the United States District Court for the Northern District of California ("NDCA") pursuant to 28 U.S.C. § 1404(a). Uniloc 2017 LLC opposes. Uniloc also moves to file a sur-reply brief and to supplement the record.

We grant Uniloc's motions to file a sur-reply and to supplement the record. For the reasons below, we grant Apple's petition.

BACKGROUND

In September 2019, Uniloc sued Apple in the Waco Division of WDTX, alleging that several Apple products infringe U.S. Patent No. 6,467,088 ("the '088 patent"). App. 16. According to Uniloc, "Apple's software download functionality, including how Apple determines compatibility for application and operating system software updates through the App Store, infringes the '088 patent." Response Br. 4. The "Accused Products include Apple devices that run iOS and macOS-based operating systems." *Id.*

In November 2019, Apple moved to transfer the case to NDCA on the basis that it would be clearly more convenient to litigate the case in that district. App. 84; *see also* 28 U.S.C. § 1404(a). To support its motion, Apple submitted a sworn declaration from Michael Jaynes, a senior finance manager at Apple. App. 105.

In January 2020, Apple moved to stay all activity in the case unrelated to its transfer motion pending a decision on the motion. App. 166–73. The district court denied the stay motion without explanation in a text entry on the docket. App. 7. The parties completed briefing and discovery on transfer in February 2020. App. 4–9.

The district court held a hearing on Apple's motion on May 12, 2020, during which the court stated that it would deny the motion and issue a written order as soon as possible. App. 10, 296. After the hearing, but before issuing a written order, the court held a *Markman* hearing, issued its claim construction order, held a discovery hearing

regarding the protective order in the case, and issued a corresponding discovery order. App. 11. In response to these advances in the case, on June 15, 2020, Apple filed this petition for a writ of mandamus. The district court issued its order denying transfer a week later, on June 22, 2020. S. App. 1–34.

## DISCUSSION

The writ of mandamus is an extraordinary remedy available to correct a clear abuse of discretion or usurpation of judicial power. *Cheney v. U.S. Dist. Ct.*, 542 U.S. 367, 380 (2004). "In reviewing a district court's ruling on a motion to transfer pursuant to § 1404(a) [on mandamus review], we apply the law of the regional circuit," in this case the Fifth Circuit. *See In re Barnes & Noble, Inc.*, 743 F.3d 1381, 1383 (Fed. Cir. 2014). "A district court abuses its discretion if it: (1) relies on clearly erroneous factual findings; (2) relies on erroneous conclusions of law; or (3) misapplies the law to the facts." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 310 (5th Cir. 2008) (en banc) ("*Volkswagen II*") (quoting *McClure v. Ashcroft*, 335 F.3d 404, 408 (5th Cir. 2003)). As "the distinction between an abuse of discretion and a clear abuse of discretion cannot be sharply defined for all cases," "[o]n mandamus review, we review for these types of errors, but we only will grant mandamus relief when such errors produce a patently erroneous result." *Id.* "To determine whether a district court clearly abused its discretion in ruling on a transfer motion, some petitions for mandamus relief that are presented to us require that we 'review[] carefully the circumstances presented to and the decision making process' of the district court." *Id.* at 312 (alteration in original) (quoting *In re Horseshoe Ent.*, 337 F.3d 429, 432 (5th Cir. 2003)).

In general, three conditions must be satisfied for a writ to issue: (1) the petitioner must demonstrate a clear and indisputable right to issuance of the writ; (2) the petitioner must have no other adequate method of attaining the desired relief; and (3) the court must be satisfied that the writ is appropriate under the circumstances. *Cheney*, 542 U.S. at 380–81. In the § 1404(a) transfer context, however, the test for mandamus essentially reduces to the first factor, given that "the possibility of an appeal in the transferee

forum following a final judgment . . . is not an adequate al-
ternative," and that "an erroneous transfer may result in
judicially sanctioned irreparable procedural injury." *In re
McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 56
(3d Cir. 2018) (internal quotation marks omitted); *see also
In re TS Tech USA Corp.*, 551 F.3d 1315, 1322 (Fed. Cir.
2008). Accordingly, the issue on appeal is whether Apple
has shown a clear and indisputable right to issuance of the
writ.

I

Before addressing the merits of Apple's petition, we
first consider Uniloc's argument that Apple waived a num-
ber of arguments by failing to raise them in its petition.

Apple filed its petition on June 15, 2020—one week be-
fore the district court issued its written order denying
transfer and more than one month after the court held a
hearing on the transfer motion and orally indicated that it
would deny the motion. Apple's reply brief, however, was
filed after the district court issued its written order deny-
ing transfer. Uniloc moved to file a sur-reply on the basis
that Apple's reply brief raised "new points of error" not
raised in the petition because Apple incorrectly guessed in
its pre-order petition as to the bases on which the district
court would support its order denying transfer. *See* Op-
posed Non-Confidential Motion of Respondent for Leave to
File Sur-Reply Brief (July 13, 2020), ECF No. 39; *see also*
Response Br. 11 (arguing that Apple "guessed wrong [in its
petition] at how the [district court] would rule on a number
of factors" and, as a result, failed "to challenge several find-
ings at all" in the initial petition). In its sur-reply, Uniloc
addresses the merits of the arguments it contends Apple
first raised in its reply brief and further argues that Apple's
purportedly newly raised arguments are waived. *See* Sur-
Reply Br. 1. Apple defends its pre-order filing, explaining
that "[g]iven the rapid progression of this case, [it could
not] wait any longer for a written order before seeking
mandamus to prevent the case from moving forward in an
inconvenient venue." Pet. 10–11.

Ordinarily, an appellant waives issues or arguments
not properly raised in its opening brief. *See Becton*

*Dickinson & Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 800 (Fed. Cir. 1990). "This practice is, of course, not governed by a rigid rule but may as a matter of discretion not be adhered to where circumstances indicate that it would result in basically unfair procedure." *Id.*; *see also Harris Corp. v. Ericsson Inc.*, 417 F.3d 1241, 1251 (Fed. Cir. 2005) ("An appellate court retains case-by-case discretion over whether to apply waiver."). To the extent Apple raises new arguments in its reply brief in response to the district court's order, we exercise our discretion to not apply waiver because doing so would be unfair under the circumstances.

Although district courts have discretion as to how to handle their dockets, once a party files a transfer motion, disposing of that motion should unquestionably take top priority. *E.g.*, *In re Horseshoe*, 337 F.3d at 433 (explaining that transfer motions should take "top priority" in the handling of a case); *McDonnell Douglas Corp. v. Polin*, 429 F.2d 30, 30 (3d Cir. 1970) ("To undertake a consideration of the merits of the action is to assume, even temporarily, that there will be no transfer before the transfer issue is decided. Judicial economy requires that another district court should not burden itself with the merits of the action until it is decided that a transfer should be effected."); *In re Nintendo Co.*, 544 F. App'x 934, 941 (Fed. Cir. 2013) (explaining that "a trial court must first address whether it is a proper and convenient venue before addressing any substantive portion of the case"); *In re EMC Corp.*, 501 F. App'x 973, 975 (Fed. Cir. 2013) (acknowledging the "importance of addressing motions to transfer at the outset of litigation").

Instead, the district court barreled ahead on the merits in significant respects, prompting Apple to file its mandamus petition before the district court issued its transfer order. For example, the court held a *Markman* hearing, issued its claim construction order, held a discovery hearing, and issued a corresponding discovery order. App. 11. These are not merely rote, ministerial tasks. Indeed, a *Markman* hearing and claim construction order are two of the most important and time-intensive substantive tasks a district court undertakes in a patent case.

Given Apple's concern over the rapid progression of this case, Apple filed its petition before the district court issued its transfer order. In the petition, Apple addressed what it believed would be the court's likely reasons for its denial of the motion. Apple was first able to directly address the district court's order in its reply brief. On these facts, and because we grant Uniloc's motion to file a sur-reply, we decline to apply waiver.[1]

## II

As to the merits, under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." Under Fifth Circuit law, to prevail on its transfer motion before the district court, Apple bore the burden of demonstrating that "the transferee venue is clearly more convenient." *Volkswagen II*, 545 F.3d at 314. The district court denied that motion. On mandamus review, Apple bears the burden of demonstrating that the court's denial amounted to a clear abuse of discretion. *Id.* at 308.

The Fifth Circuit assesses transfer requests using the well-established private and public interest factors. *Id.* at 315. "The private interest factors are: '(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *Id.* (quoting *In re Volkswagen AG*,

---

[1]    To the extent this order could be construed as condoning pre-order mandamus petitions, we take care to emphasize the particular circumstances of this case: namely, the district court heavily prioritized the merits of the case, and Uniloc was allowed a sur-reply. We also note that Apple's decision to file a pre-order petition was not without consequence to Apple. Indeed, Apple was only able to file one brief directly responding to the district court's arguments, and Uniloc, through its sur-reply, received both the last word and extra space for briefing.

371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*")). And "[t]he public interest factors are: '(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.'" *Id.* (alteration in original) (quoting *Volkswagen I*, 371 F.3d at 203).

The parties agree that the third and fourth public interest factors are neutral in this case but dispute whether the remaining factors weigh for or against transfer. *See* Pet. 34; Response Br. 11. We conclude that Apple has demonstrated that the district court clearly abused its discretion in denying transfer.[2] We discuss the relevant private and public interest factors in turn.

A. Relative ease of access to sources of proof

The district court concluded that the first private interest factor—the relative ease of access to sources of proof—"weighs slightly in favor of transfer." S. App. 15; *see also* S. App. 22. The court divided its analysis between the location of witnesses and the location of relevant documents.

The district court determined that "the location of witnesses weighs in favor of transfer," because "Apple provides sufficient argument that most relevant party witnesses are located in NDCA." S. App. 21. Even after taking potential third-party witnesses into account, the

---

[2] The dissent states in its conclusion that Apple's "petition itself does not raise many of the arguments the majority relies upon in its decision." Dissent at 12. To the extent this statement might be misconstrued as suggesting that we have relied on arguments not advanced by Apple, that is not the case. For the reasons explained above, we have not applied waiver under the circumstances here. Therefore, we have considered all the arguments in the papers before us, including those in Apple's reply brief and in the sur-reply we permitted Uniloc to file.

district court concluded that "the greater balance of wit-
nesses . . . are located within NDCA." S. App. 21–22.

The court concluded that "the location of relevant doc-
uments was neutral." S. App. 22; *see also* S. App. 19. In
reaching this conclusion, the court credited "Uniloc's argu-
ment concerning the physical location of its documents" in
a different Texas district as being closer to WDTX than
NDCA. S. App. 19. With respect to Apple, the court noted
that Apple's campus in Austin, Texas houses revenue and
accounting documents that the court concluded might be
"relevant to ascertaining what damages Uniloc could argue
at trial and Uniloc's inducement claim." S. App. 20. The
court also highlighted that Apple's Austin campus might
house instruction documents relevant to Uniloc's induce-
ment claim. *Id.* The court further noted that Apple owns
content delivery network ("CDN") servers in the Northern
District of Texas that might be relevant because Apple uses
the CDN "to store and distribute apps and other content of
the accused App Store." *Id.* With respect to third parties
located within WDTX, the district court explained that
"Flextronics, the third-party manufacturer of an Accused
Product, may have relevant documents," but that such doc-
uments may be "duplicative" of what Apple will itself pro-
duce. *Id.* For these reasons, the court found "that there
are documents relevant to this case located in this District,
such that Apple has not shown it is clearly more convenient
to transfer this case to NDCA." *Id.*

The district court ultimately determined that because
the location of witnesses weighs in favor of transfer, but the
location of documents was neutral, the first private interest
factor "weighs slightly in favor of transfer." S. App. 15; *see
also* S. App. 22.

The district court legally erred in considering wit-
nesses as "sources of proof" for purposes of the first private
interest factor. This factor relates to the ease of access to
non-witness evidence, such as documents and other physi-
cal evidence; the third private interest factor—the cost of
attendance for willing witnesses—relates to the conven-
ience of each forum to witnesses. *See, e.g.*, *Volkswagen II*,
545 F.3d at 316–18; *see also Duha v. Agrium, Inc.*, 448 F.3d
867, 876 (6th Cir. 2006) ("Access to non-witness sources of

proof, including documents in particular, is properly considered as part of the ease-of-access factor."); *In re Acer Am. Corp.*, 626 F.3d 1252, 1255–56 (Fed. Cir. 2010) (analyzing witness convenience under the third private interest factor and documentary and physical evidence under the first private interest factor). If witness convenience is considered when assessing both the first and third private interest factors, witness convenience will be inappropriately counted twice.

The district court also misapplied the law to the facts in analyzing the location of relevant documents. Notably, in its substantive analysis of this factor, the district court failed to even mention Apple's sources of proof in NDCA, much less meaningfully compare them to proof in or nearer to WDTX. Rather, the district court concluded that the factor was neutral merely because there existed some "documents relevant to this case located in the District, such that Apple has not shown it is clearly more convenient to transfer this case to NDCA." S. App. 20. The district court's analysis confuses Apple's burden of demonstrating that the transferee venue is clearly more convenient with the showing needed for a conclusion that a particular private or public interest factor favors transfer. Indeed, a factor can favor transfer even if that factor is, standing alone, insufficient to warrant transfer. *See, e.g.*, *Volkswagen II*, 545 F.3d at 315; *Action Indus., Inc. v. U.S. Fidelity & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). And although we credit the district court's determination that some relevant documents are located in WDTX, the movant need not show that all relevant documents are located in the transferee venue to support a conclusion that the location of relevant documents favors transfer. Nor is this factor neutral merely because some sources of proof can be identified in the district. The district court erred in holding otherwise.

Even to the extent the district court's order can be interpreted as attempting to conduct an appropriate comparison of the ease of access to sources of proof in the two forums, the court erred by overemphasizing the sources of proof in or nearer to WDTX and failing to meaningfully consider the sources of proof in NDCA. "In patent infringement cases, the bulk of the relevant evidence usually comes

from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). In his sworn declaration, Mr. Jaynes stated that Apple stores a significant amount of relevant information in NDCA, including the relevant source code, Apple records relating to the research and design of the accused products, and marketing, sales, and financial information for the accused products. *See, e.g.*, App. 115–16 ¶¶ 23, 30; App. 119 ¶¶ 47, 48; App. 184; Pet. 29–30. Neither the district court nor Uniloc disputes that such records are located in NDCA. Mr. Jaynes also stated in his sworn declaration that he was unaware of any relevant documents in WDTX. App. 119 ¶ 49. Again, although we credit the district court's identification of some relevant proof located in or nearer to WDTX, the district court erred by failing to meaningfully consider the wealth of important information in NDCA.

While we note these errors, we need not reweigh the evidence (or, rather, weigh Apple's evidence in the first instance), or otherwise disturb the district court's ultimate conclusion that the location of relevant documents is neutral, because the remainder of the factors convince us that transfer is appropriate and that the court clearly abused its discretion in concluding otherwise.

## B. The availability of compulsory process to secure the attendance of witnesses

The district court concluded that the second private interest factor—the availability of compulsory process to secure the attendance of witnesses—was neutral in this case. S. App. 23–24. On review, we see no reason to disturb the district court's conclusion on this factor.

## C. The cost of attendance for willing witnesses

Next we turn to "an important factor, the convenience for and cost of attendance of witnesses." *Genentech*, 566 F.3d at 1343. In analyzing this factor, the Fifth Circuit uses the "100-mile rule," which provides that "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct

relationship to the additional distance to be traveled." *Volkswagen II*, 545 F.3d at 317 (quoting *Volkswagen I*, 371 F.3d at 204–05).

In *Genentech*, this court—applying Fifth Circuit law—held that "the '100-mile' rule should not be rigidly applied" where "witnesses . . . will be required to travel a significant distance no matter where they testify." 566 F.3d at 1344. *Genentech* specifically held that witnesses traveling from Europe, Iowa, and the East Coast would be only "slightly more inconvenienced by having to travel to California" than to Texas. *Id.* at 1348. This sensible holding stems from the observation that, regardless of the ultimately chosen venue, such witnesses will be required to travel a significant distance, will likely incur meal and lodging expenses, and will likely incur time away from home. *See id.* at 1344. *Genentech*'s interpretation of the 100-mile rule is consistent with the Fifth Circuit's reasoning underlying the rule, which forcefully applies to witnesses who reside near one of the two districts but not to the circumstances presented here:

> Additional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment. Furthermore, the task of scheduling fact witnesses so as to minimize the time when they are removed from their regular work or home responsibilities gets increasingly difficult and complicated when the travel time from their home or work site to the court facility is five or six hours one-way as opposed to 30 minutes or an hour.

*Volkswagen I*, 371 F.3d at 205.

The district court concluded that this factor was neutral. S. App. 26–27. The court divided its analysis into the convenience to third-party witnesses and the convenience to party witnesses.

The court determined that "the location of third-party witnesses weighs against transfer." S. App. 26; *see also* S. App. 27 (concluding that "the inventors being located

closer to WDTX is a *significant fact that weighs against transfer*" (emphasis added)).  The court highlighted that Uniloc identified three important third-party witnesses believed to reside in New York: the attorney who prosecuted the asserted patent and the patent's two named inventors.  S. App. 25, 27.  The court reasoned that because the inventors are likely to be two of the most important witnesses called at trial, and because these inventors live "much closer to WDTX than NDCA," the location of third-party witnesses weighed against transfer.  S. App. 26–27.  The court also determined that "the location of party witnesses slightly weighs in favor of transfer to NDCA."  S. App. 26.  In sum, the court concluded that the factor was neutral.  S. App. 26–27.

The district court misapplied the law to the facts of this case by too rigidly applying the 100-mile rule.  As a result, the district court gave too much significance to the fact that the inventors and patent prosecutor live closer to WDTX than NDCA.  Although it might be true that these individuals will need to travel a greater distance to reach NDCA than WDTX, and although a flight from New York to WDTX might take a bit less time than from New York to NDCA, in either instance these individuals will likely have to leave home for an extended period of time and incur travel, lodging, and related costs.  As expressed in *Genentech*, the 100-mile rule "should not be rigidly applied" where witnesses "will be required to travel a significant distance no matter where they testify."  566 F.3d at 1344.  These witnesses will only be "slightly more inconvenienced by having to travel to California" than to Texas.[3]  *See id*. at 1348.

---

[3]     The dissent argues that our determination reflects "mere disagreement with the district court[]."  Dissent at 3.  We are puzzled as to how our conclusion—that the district court misapplied the law by rigidly applying the law in a manner inconsistent with *Genentech*—amounts to a mere "disagreement" with the district court.  We also do not understand how this conclusion disregards our standard of review, considering that we are obligated to review for

In view of this misapplication of the law, and in view of the district court's findings that "most relevant party witnesses are located in NDCA" and "it is likely that both Apple and Uniloc will each have one or more potential trial witnesses from NDCA," S. App. 27, this factor weighs at least slightly in favor of transfer. *See Volkswagen II*, 545 F.3d at 317 (concluding that the district court "erred in applying this factor" when, contrary to the district court's conclusion, the factor weighed in favor of transfer).

### D. All other practical problems that make trial of a case easy, expeditious, and inexpensive

The district court concluded that the fourth private interest factor—all other practical problems that make trial of a case easy, expeditious, and inexpensive—"weighs heavily against transfer." S. App. 30. The court reasoned that "significant steps" had already been taken in the case. S. App. 29. In particular, the court explained that the parties exchanged infringement and invalidity contentions, the parties "briefed and argued *Markman* claim terms," and the court held a *Markman* hearing and "issued a claim construction order." S. App. 29–30. Thus, wrote the court, "NDCA would have to duplicate this Court's efforts to construe the patent unless it merely chose to accept what this Court has already determined and entered." S. App. 30. The district court further remarked that because NDCA has more pending civil cases than WDTX, a transfer to NDCA, "a forum with a significantly higher level of case

---

clear misapplications of the law. *E.g.*, *Volkswagen II*, 545 F.3d at 310. Only by giving district courts unbounded discretion would we defer to this misapplication of law. Finally, we reject the dissent's apparent invitation to discard or otherwise ignore *Genentech*.

The dissent also appears to suggest that we have entirely dispensed with the 100-mile rule and that we "seek[] to eliminate the application of this rule to third-party witnesses residing a plane ride away from both districts." Dissent at 4. To the contrary, we merely follow *Genentech*'s sensible holding that the 100-mile rule should not be rigidly applied in circumstances such as these.

congestion," would be "an act *against* judicial economy." S. App. 29–30.

Apple argued that this factor "weighs in favor of transfer because of the twenty-one cases [presenting some overlapping issues] that have been transferred from districts in Texas to NDCA." S. App. 28. The district court was unpersuaded, reasoning that many of those twenty-one cases were stayed, the active cases lacked set trial dates, and the cases related to different patents. S. App. 29–30. The court explained that it "disagrees that a case should be transferred when another case with the same parties and only some overlapping issues such as standing and subject matter jurisdiction are present in another district." S. App. 30.

The district court legally erred in its analysis of this factor. Aside from the service of preliminary infringement contentions, *see* App. 32–34, all the "significant steps" that had been taken by the court and parties in the case were taken *after* Apple moved for transfer in November 2019, as well as *after* Apple moved to stay the case in January 2020. For example, the parties submitted *Markman* briefing in February and March 2020. What's more, most of the "significant" steps the district court relied on were taken *after* the district court's May 12, 2020 hearing on the transfer motion, during which the court explained that the motion would be denied. In particular, after the transfer hearing but before issuing a transfer order, the district court held a *Markman* hearing and issued its claim construction order. The court also held a discovery hearing and issued a corresponding discovery order.

As stated previously, once a party files a transfer motion, disposition of that motion should take top priority in the case. *E.g.*, *In re Horseshoe*, 337 F.3d at 433; *McDonnell Douglas Corp.*, 429 F.2d at 30; *In re Nintendo*, 544 F. App'x at 941; *In re EMC*, 501 F. App'x at 975. Setting aside the questionable prioritization of other proceedings over the pending transfer motion, the district court legally erred in concluding that the merits-related steps it had taken weighed heavily against transfer. A district court's decision to give undue priority to the merits of a case over a party's transfer motion should not be counted against that party in the venue transfer analysis.

The district court also misapplied the law to the facts of this case in concluding that judicial economy weighed against transfer because NDCA has more pending cases than WDTX.[4] "To the extent that court congestion matters, what is important is the speed with which a case can come to trial and be resolved." *See In re Ryze Claims Sols., LLC*, 968 F.3d 701, 710 (7th Cir. 2020) (quoting *In re Factor VIII or IX Concentrate Blood Prods. Litig.*, 484 F.3d 951, 958 (7th Cir. 2007)); *see also Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1337 (9th Cir. 1984) (concluding, in assessing the impact of court congestion on the § 1404(a) analysis, that "[t]he real issue is . . . whether a trial may be speedier in another court because of its less crowded docket").

As the district court acknowledged, NDCA and WDTX have historically had comparable times to trial for civil cases (25.9 months for NDCA versus 25.3 months for WDTX), and, most relevantly, NDCA has historically had a *shorter* time to trial for patent cases. *See* S. App. 30. Although the district court noted that NDCA has more pending cases than WDTX, this fact is, without more, too tenuously related to any differences in speed by which these districts can bring cases to trial.

After accounting for the district court's errors, we are left with nothing relevant to this factor weighing against transfer. However, there are judicial economy benefits on the other side of the ledger: namely, as the district court conceded, there are pending cases in NDCA with "some overlapping issues." S. App. 30. Even crediting (as we do) each of the district court's findings discounting the benefits of transfer to NDCA on this basis (e.g., many cases in NDCA are stayed and lack trial dates, and the cases differ in many respects), it is beyond question that the ability to transfer a case to a district with numerous cases involving some overlapping issues weighs at least slightly in favor of

---

[4]    We question whether such considerations of "judicial economy" might have been more appropriately assessed under the first public interest factor—the administrative difficulties flowing from court congestion.

such a transfer.  Accordingly, this factor weighs at least slightly in favor of transfer.

### E. The administrative difficulties flowing from court congestion

The district court concluded that the first public interest factor—the administrative difficulties flowing from court congestion—"weighs against transfer."  S. App. 30–31.  The court acknowledged that NDCA historically "has a shorter time to trial for patent cases than WDTX." S. App. 30.  But, the district court concluded, "because the Court has already set the trial date in this case, the prospective time from filing to trial is 18.4 months," which is "42.5 percent faster than previous WDTX cases" and faster than the historical time to trial in NDCA.  S. App. 31.

The district court misapplied the law to the facts of this case by relying too heavily on the scheduled trial date.  We have previously explained that a court's general ability to set a fast-paced schedule is not particularly relevant to this factor.  *See, e.g.*, *In re Adobe Inc.*, 823 F. App'x 929, 932 (Fed. Cir. 2020).  Indeed, a district court cannot merely set an aggressive trial date and subsequently conclude, on that basis alone, that other forums that historically do not resolve cases at such an aggressive pace are more congested for venue transfer purposes.  This is particularly true where, like here, the forum itself has not historically resolved cases so quickly.  Thus, this factor is neutral.[5]

---

[5]    We further note that this factor frequently calls for speculation.  For example, scheduled trial dates are often subject to change, and the district court's anticipated time to trial is significantly shorter than the district's historical time to trial.  Because this factor often calls for speculation, where "several relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all of those other factors."  *See Genentech*, 566 F.3d at 1347.

F. The local interest in having localized interests decided
at home

The district court concluded that the second public in-
terest factor—the local interest in having localized inter-
ests decided at home—was "neutral in terms of transfer."
S. App. 33. The court reasoned that "Apple has substantial
presences in both NDCA and WDTX, so both districts have
a significant interest in this case." S. App. 32. In addition,
the court explained that "WDTX has a significant localized
interest because of the state and local tax benefits received
by and pledged to Apple to build a second campus in Aus-
tin." *Id.* The district court concluded that "Uniloc's pres-
ence in NDCA, but not in WDTX, weighs in favor of
transfer." S. App. 33. The district court further remarked
that "Flextronics' presence in this District weighs slightly
against transfer," but the court ultimately concluded that
the factor was neutral irrespective of whether Flextronics
was considered. *See* S. App. 33 (concluding that this factor
is neutral "even if Flextronics was excluded from the
Court's analysis").

The district court misapplied the law to the facts of this
case in analyzing this factor. This factor most notably re-
gards not merely the parties' significant connections to
each forum writ large, but rather the "significant connec-
tions between a particular venue and *the events that gave
rise to a suit.*" *See In re Acer*, 626 F.3d at 1256 (emphasis
added); *see also Volkswagen II*, 545 F.3d at 318 (explaining
that this factor pertains to a forum's "connections with the
events that gave rise to th[e] suit"); *In re HP Inc.*, No. 2020-
140, 2020 WL 5523561, at *1, *4 (Fed. Cir. Sept. 15, 2020)
(concluding that the district court correctly recognized that
the local interests factor weighed at least slightly in favor
of transfer from the Eastern District of Texas ("EDTX") to
NDCA because "more of the events giving rise to this suit
appear to have occurred in [NDCA] than in [EDTX]—
specifically, the development of the accused products").
The district court thus misapplied the law to the facts by
so heavily weighing Apple's general contacts with the fo-
rum that are untethered to the lawsuit, such as Apple's
general presence in WDTX and the state and local tax

benefits it purportedly received from the district.[6] The dis-
trict court also misapplied the law to the facts by failing to
give weight to the "significant connections between
[NDCA] and *the events that gave rise to a suit.*" *See In re
Acer*, 626 F.3d at 1256 (emphasis added). Because of
Uniloc's "presence in NDCA" and absence from WDTX; be-
cause the accused products were designed, developed, and
tested in NDCA; and because the lawsuit "calls into ques-
tion the work and reputation of several individuals resid-
ing" in NDCA, *In re Hoffman-La Roche Inc.*, 587 F.3d 1333,
1336 (Fed. Cir. 2009), this factor weighs in favor of trans-
fer.[7]

The dissent argues that our analysis of this factor is
"overblown." Dissent at 8. It relies on the following facts
as both relevant to the local interests factor and weighing
against transfer: (1) Apple has a large presence, and is in-
creasing its presence, in WDTX; (2) Apple maintains CDN
servers in Dallas, Texas, and has "at least seven employees
in WDTX with duties concerning Apple's CDN"; (3) Apple

---

[6]    In addition, to the extent the district court relies on
the fact that Apple's presence in the district is expected to
increase in the future, neither Uniloc nor the district court
has explained how Apple's future plans in WDTX relate in
any way to this lawsuit.

[7]    The dissent states that "[e]ven Apple's petition did
not argue that it would be a clear abuse of discretion to find
this factor neutral." Dissent at 10. We decline to engage
with this minor semantical point other than to say that Ap-
ple properly raised an argument that the district court
erred in concluding that this factor did not favor transfer.
*See, e.g.*, Pet. at 34 ("The other two public-interest factors
either weigh in favor of transfer or, at the very least, cannot
weigh against it."); *id.* ("The interest of the district where
the accused technology was designed and developed is self-
evidently stronger than that of a district with no tie to this
case."); *id.* at 34–37 (generally arguing that NDCA's inter-
est outweighs WDTX's interest, and that "[e]ven accepting
every speculation by Uniloc, the local interest factor would
at most be neutral"); *see also* Reply Br. 19 (The local inter-
ests factor "should have weighed in favor of transfer.").

performs some relevant revenue reporting and accounting activities in WDTX; and (4) Apple contracts with Flextronics to manufacture one of the accused products in WDTX. Dissent at 8–9.

We have already discussed Apple's presence, and increasing presence, in WDTX above but add that both the district court and the dissent improperly conflate the requirements for establishing venue under 28 U.S.C. § 1400(b) and the requirements for establishing transfer under § 1404(a). "The statutory rights under [§] 1400(b) . . . are independent of the convenience-based rights under § 1404(a)." *In re Oath Holdings Inc.*, 908 F.3d 1301, 1306 (Fed. Cir. 2018). Indeed, the entire premise of a § 1404(a) transfer motion is that a case, *although brought in a proper venue*, should nevertheless be transferred for the convenience of the parties. *See, e.g.*, *HollyAnne Corp. v. TFT, Inc.*, 199 F.3d 1304, 1307 (Fed. Cir. 1999) ("Section 1404(a) allows a court where venue is proper to transfer a case to a more convenient forum.").

As to the CDN servers in Dallas, Texas, it is unclear why these servers are entitled to any weight, particularly given that the district court neither mentioned nor gave weight to these CDN servers in its analysis, and considering that the servers are located in the Northern District of Texas, not WDTX.

As to Apple's CDN employees in the district and the fact that Apple performs some relevant financial activity in WDTX, we are unclear as to why the dissent focuses exclusively on these employees and this activity to the exclusion of all other employees and activity. This is particularly perplexing considering that the district court did not discuss these employees or activity at all in its analysis of this factor, other than to merely acknowledge Uniloc's argument that the "witnesses it identified" weigh against transfer. S. App. 32. Moreover, the district court did not otherwise provide any reason to give these employees and

this activity weight above and beyond other relevant employees and activity.[8]

Finally, as to Flextronics, as we note above, the district court itself gave Flextronics little weight with respect to this factor. We see no error in this conclusion.

## III

We conclude our discussion by addressing two additional points from the dissent. First, on numerous occasions, the dissent criticizes us for applying what it refers to as "de novo" review. To the contrary, and as we have explained throughout the order, we properly reviewed the district court's order only for reliance on clearly erroneous fact findings, erroneous conclusions of law, or misapplications of law to fact. *See Volkswagen II*, 545 F.3d at 310. District courts have no discretion to make these kinds of errors. *See id.* And when such errors accumulate to produce a patently erroneous result, as they have here, we are obliged to act. *See id.*; *see also id.* at 318 ("[W]e hold that the district court's errors resulted in a patently erroneous result."). To the extent the dissent believes otherwise, it is mistaken. A district court's "exercise of its discretion is not unbounded; that is, a court must exercise its discretion within the bounds set by relevant statutes and relevant, binding precedents." *Id.* at 310.

Even more troubling, the dissent says that our order will somehow invite mandamus petitions based "almost entirely" on what it refers to as "ad hominem attacks on esteemed jurists." Dissent at 3. That is a baseless and counterproductive statement about our order. Notably, the dissent supports its assertion with citations to *Apple's petition* that the dissent contends constitute such attacks. *Our order*, however, relies on Apple's relevant arguments and the record in the case, not on anything the dissent refers to as "ad hominem attacks." For this reason, we do not

---

[8]    And in any event, when discussing the private interest factors, the district court concluded that most relevant party witnesses resided in NDCA, which undercuts the dissent's analysis.

understand how our order could reasonably be construed as inviting such attacks. If anything, the fact that our order completely ignores what the dissent calls "ad hominem attacks" will discourage future litigants from wasting precious briefing space on such statements.

## CONCLUSION

We have considered Uniloc's remaining arguments but find them unpersuasive. For the foregoing reasons, we hold that "the district court's errors resulted in a patently erroneous result" and grant Apple's mandamus petition. *See Volkswagen II*, 545 F.3d at 318.

Accordingly,

IT IS ORDERED THAT:

(1) The petition is granted.

(2) The motion to file a sur-reply brief is granted.

(3) The motion to supplement the record is granted.

(4) The motion by ACT | The App Association, The Computer & Communications Industry Association, Unified Patents, LLC, and Roku, Inc. for leave to file a brief *amici curiae* in support of Apple Inc. is granted.

FOR THE COURT

November 9, 2020          /s/ Peter R. Marksteiner
         Date                     Peter R. Marksteiner
                                  Clerk of Court

# United States Court of Appeals for the Federal Circuit

———————————

**IN RE: APPLE INC.,**
*Petitioner*

———————————

2020-135

———————————

On Petition for Writ of Mandamus to the United States District Court for the Western District of Texas in No. 6:19-cv-00532-ADA, Judge Alan D. Albright.

———————————

MOORE, *Circuit Judge*, dissenting.

Our review on a petition for a writ of mandamus is supposed to be limited—we are to grant mandamus to overturn a transfer decision only when the district court has clearly abused its discretion, "produc[ing] a patently erroneous result." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 310 (5th Cir. 2008) (*Volkswagen II*). "Our reluctance to interfere is not merely a formality, but rather a longstanding recognition that a trial judge has a superior opportunity to familiarize himself or herself with the nature of the case and the probable testimony at trial, and ultimately is better able to dispose of these motions." *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010). Our mandamus jurisdiction is not an invitation to exercise de novo dominion, as the majority does here, over the district court's individual fact findings and the balancing determination that Congress has committed "to the sound discretion of the trial court." *Id.* at 1346; 28 U.S.C. § 1404(a). Nor is it an invitation for us to criticize the way our district court

colleagues generally manage their dockets, or as the major-
ity puts it, "barrel" ahead on the merits in any given case.
Maj. at 5.

The district court here thoroughly considered each con-
venience factor on the record before it. It acknowledged
that Apple had identified several party witnesses residing
in the Northern District of California. It ultimately found,
however, that Uniloc chose a venue in the district in which
Apple maintains a large campus employing thousands of
people, where one of the accused products is manufactured,
where third-party information and potential witnesses are
located, and which is convenient for potential witnesses
and sources of proof and which would not impose a signifi-
cant hardship on Apple. The district court therefore con-
cluded that Apple has not shown that it is clearly more
convenient for the parties and witnesses to transfer the in-
stant case to the Northern District of California. S.A. 34.
I do not agree with the majority in light of these facts that
the district court clearly abused its discretion in refusing
transfer.

We must recognize our limited role in this process—
there is no more deferential standard of review than clear
abuse of discretion. Under the clear abuse of discretion
standard, our role is to defer to the broad discretion of the
district court except as necessary to correct a usurpation of
judicial power or a patently erroneous result. *Volkswagen
II*, 545 F.3d at 312 ("But—and we stress—in no case will
we replace a district court's exercise of discretion with our
own; we review only for clear abuses of discretion that pro-
duce patently erroneous results."); *In re Volkswagen of
Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009) (*Volkswagen
III)* ("A suggestion that the district court abused its discre-
tion, which might warrant reversal on a direct appeal, is
not a sufficient showing to justify mandamus relief."); *In re
Barnes & Noble, Inc.*, 743 F.3d 1381, 1383 (Fed. Cir. 2014)
("Th[e] standard is an exacting one, requiring the peti-
tioner to establish that the district court's decision

amounted to a failure to meaningfully consider the merits of the transfer motion."). Rather than conducting this limited review, the majority usurps the district court's role in the transfer process, disregards our standard of review and substitutes its judgment for that of the district court. I am concerned that the majority's blatant disregard for the district court's thorough fact findings and for our role in a petition for mandamus will invite further petitions based almost entirely on ad hominem attacks on esteemed jurists similar to those Apple wages here. *See, e.g.*, Petition at 12; *id.* at 14; *id.* at 14–15; *id.* at 15; *id.* at 16. First, parties should be mindful that personal attacks against judges such as those lodged in this case are not welcome, and at least in my opinion completely unwarranted. Second, I am not comfortable with the new role the majority has carved out for our court, and I believe it is inconsistent with the Fifth Circuit law that we are bound to follow.

## I.     The Cost of Attendance for Willing Witnesses

The majority's mere disagreement with the district court's determination that the cost of attendance for willing witnesses is neutral does not warrant the extraordinary remedy of mandamus. The majority feigns confusion regarding the suggestion that it merely disagrees with the district court's weighing of this factor. Maj. at 12 n.3. But it does not contest the district court's finding that the location of party witnesses only "slightly weighs in favor of transfer." S.A. 26. Nor does it address the court's finding that because "Apple is building its own hotel [in Austin], the cost of attending a trial in the Austin division of WDTX may also weigh against transfer." S.A. 13. Nor does it contest, even under *Genentech*, the district court's findings that the Northern District of California would be more inconvenient, time-consuming and costly for potential third-party witnesses residing in New York and within the Western District of Texas, or that these facts weigh against transfer. S.A. at 26–27; Maj. at 12 (expressly acknowledging that the third-party witnesses will be "'more

inconvenienced by having to travel to California' than to
Texas"). Try as it may to cast this as a "misapplication of
the law to facts," the majority's criticism of the district
court merely amounts to a belief that the district court
"gave too much significance" to the inconvenience of the
third-party witnesses. Maj. at 12. That criticism is incon-
sistent with our role in reviewing district court transfer de-
cisions on mandamus, where the district court's decision
must be upheld unless it is "patently erroneous."

To justify its appellate fact finding that the inconven-
ience to party witnesses outweighs the inconvenience to
third-party witnesses, the majority strains to identify a le-
gal error in the district court's application of the Fifth Cir-
cuit's 100-mile rule. The 100-mile rule is clear: "[w]hen the
distance between an existing venue for trial of a matter and
a proposed venue under § 1404(a) is more than 100 miles,
the factor of inconvenience to witnesses increases in direct
relationship to the additional distance to be traveled."
*Volkswagen II*, 545 F.3d at 317. The majority seeks to elim-
inate the application of this rule to third-party witnesses
residing a plane ride away from both districts. But the
Fifth Circuit reaffirmed the 100-mile rule in 2008, clearly
contemplating air travel, and yet imposed no air-travel lim-
its on the rule. The majority contends that the district
court applied the 100-mile rule "in a manner inconsistent
with *Genentech*." Maj. at 12 n.3. But as the majority con-
cedes, even in *Genentech*, which the majority cites for the
proposition that the 100-mile rule "should not be rigidly ap-
plied," we applied the 100-mile rule to witnesses residing a
plane ride away from both the transferee and transferor
districts, and concluded that those third-party witnesses
would more be inconvenienced by traveling to the Northern
District of California than to the Eastern District of Texas.
566 F.3d 1338, 1348 (Fed. Cir. 2009); Maj. at 12. Contrary
to the majority's suggestion, it is not a clear abuse of dis-
cretion to find the right facts, apply the right law and
simply weigh a factor differently than an appellate judge

would.  To the extent there is any dispute regarding the
extent of inconvenience faced by all willing witnesses, it
was Apple's burden to prove that the transferee forum is
clearly more convenient.  The district court found that Ap-
ple failed to carry that burden and we must defer to that
finding absent a clear abuse of discretion.

## II.    All Other Practical Problems That Make Trial of a Case Easy, Expeditious and Inexpensive

The majority next criticizes the district court's analysis
of the practical problems that make trial of a case easy, ex-
peditious and inexpensive.  Maj. at 13–16.  The district
court found that this factor weighed heavily in favor of
denying transfer.  S.A. 30.  I agree that the district court
erred in considering events (such as claim construction) oc-
curring after Apple filed its motion to transfer, therefore
the court's conclusion that this factor weighs heavily
against transfer may be flawed.  This error alone, however,
does not mean that this factor flips from heavily against
transfer to slightly in favor of transfer.  *Volkswagen II*, 545
F.3d at 315 n.11 (emphasizing that "mandamus does not
reach all erroneous rulings of the district court").  The dis-
trict court considered factors of judicial economy separate
and apart from its own case progress such as trial dates,
case and docket congestion, and the similarity of other
pending lawsuits and concluded that these factors also "in-
dicate that keeping the case in WDTX would have a more
positive impact."  S.A. 29.  Setting aside the district court's
consideration of its own progress in the case occurring after
Apple filed its transfer motion, we must defer to the district
court's finding that the separate judicial economy consider-
ations also weigh in favor of denying transfer.  To the ex-
tent the majority believes the district court's consideration
of events occurring after Apple filed its motion undermines
the entirety of the district court's remaining fact findings,
the appropriate remedy would be to remand for reconsider-
ation.  *See, e.g., In re Nitro Fluids*, No. 2020-142, Slip op.
at 8 (Fed. Cir. Oct. 28, 2020); *In re Dropbox*, 814 F. App'x

598, 599–600 (Fed. Cir. 2020). It is inappropriate for the majority to use a single legal error to justify resolving factual disputes and to reconsider this factor anew on a petition for mandamus.

The majority seizes on the fact that there are other cases between Apple and Uniloc that have already been transferred to the Northern District of California, and concludes "it is beyond question that the ability to transfer a case to a district with numerous cases involving some overlapping issues weighs at least slightly in favor of transfer." Maj. at 15–16. This statement of law that is apparently beyond question (though without citation to anything) disregards all the carefully considered facts regarding NDCA and the cases themselves which the district court discussed over many pages of its opinion. The district court determined that judicial economy does not weigh in favor of transfer after carefully considering the transferred cases, noting that "the asserted patent" and "the documents and source code relevant to proving infringement" are "unique to this case." S.A. 29. Given the limited overlap in the cases, the "lack of set trial dates and the number of stayed cases" between the parties in the Northern District of California, and the congestion of the transferee docket, the court found that keeping the case in the Western District of Texas would have "a more positive impact." *Id.* The district court also noted that the other cases between these parties were spread among various Northern District of California judges, that the cases were not consolidated before the same trial judge, and the NDCA local rules would not steer towards consolidation. S.A. 28–30. In short, the court found the other NDCA cases significantly different and widely dispersed. The majority barely mentions these careful, thoughtful, thoroughly analyzed fact findings en route to its conclusion that it will grant transfer.

Moreover, the court extensively analyzed the congestion in both dockets, explaining that although WDTX historically had only a slightly quicker median time from

filing to disposition (25.3 versus 25.9 months), NDCA cur-
rently had three times the number of civil cases as WDTX.
S.A. 29–30.  The court further held that its trial date for
this case would result in a shorter time to trial of 18.4
months compared with the average time to trial of approx-
imately 32 months for patent cases in NDCA.  S.A. 31.  The
majority finds no flaws with these fact findings (and claims
to credit them), but it nonetheless dismisses them out of
hand as insufficient to support the district court's analysis.

The majority cites our decision in *Adobe* for the propo-
sition that the district court relied too heavily on the sched-
uled trial date.  But in *Adobe*, we merely concluded that the
district court erred in giving dispositive weight to the dis-
trict court's general ability to set a trial schedule.  823 F.
App'x 929, 932 (Fed. Cir. 2020).  Contrary to the majority's
suggestion, the court here did not conclude "on that basis
alone" that NDCA is more congested than WDTX.  Maj. at
16.  The court instead considered the relative congestion in
each district, number of pending cases, historical time to
trial for each district and the projected time to trial in the
instant case and found that there was an appreciable dif-
ference in court congestion.  The majority does not refute
these thoughtful, thorough fact findings or point to any ev-
idence that NDCA would resolve this case faster than
WDTX.  Nor does the majority suggest a district court
should not consider its time to trial.  Instead, the majority
cites *Genentech* in an attempt to distract from its de novo
review.  Maj. at 16 n.5.  But as in *Genentech,* I do not see
how we can disturb the district court's finding that judicial
economy favors denying transfer under a clear abuse of dis-
cretion standard.  *See Genentech*, 566 F.3d at 1347 ("We do
not disturb the district court's suggestion that it could dis-
pose of the case more quickly than if the case was trans-
ferred to the Northern District of California").  Setting
aside the district court's own post-transfer motion case pro-
gress, the facts still support the court's conclusion that this
factor favors denying transfer.  This is true de novo (the

standard the majority seems to be applying), and certainly
true under the actual standard—the clear abuse of discre-
tion standard.

### III.  Local Interests in Having Localized Interests De-
cided at Home

Lastly, the majority criticizes the district court's weigh-
ing of the parties' local interests.  This criticism is over-
blown and inconsistent with our role as an appellate court.
As the district court found, even though Apple is headquar-
tered in Cupertino, California, it has a campus of more
than 8,000 employees in the Western District of Texas.
S.A. 4.  Apple has committed to expanding this presence in
the district by adding 5,000 to 15,000 employees.  S.A. 12.
It also has multiple retail stores in the district and is build-
ing its own local hotel.  This is not the same local interest
as every other district where Apple happens to have a retail
store.  Apple performs some of its revenue reporting and
accounting activities on its Austin campus and Uniloc al-
leges (and Apple does not dispute) that these accounting
activities process revenue tied to the alleged infringing
functionality.  Apple maintains content delivery network
(CDN) servers in Dallas that store and distribute apps and
other content.  S.A. 20.  The district court found that Apple
has at least seven employees in WDTX with duties concern-
ing Apple's CDN (related to the actual alleged infringe-
ment in this case).

The majority does not dispute these facts.  Instead, the
majority contends that these facts should not be entitled to
any weight based on a specious claim that the district court
did not mention Apple's CDN servers, engineers or its fi-
nancial activities "at all in its analysis of this factor."  Maj.
at 19.  This is untrue.  The district court referenced Apple's
CDN servers, CDN engineers and Apple's financial ac-
counting activities throughout its opinion:

> Uniloc acknowledges the fact that Apple uses a con-
> tent delivery network (CDN) to store and distribute

apps and other content of the accused App Store. Because there are Apple-owned CDN servers located in Dallas, and at least seven Apple employees in the District have job duties pertaining to Apple's CDN, Uniloc makes a reasonable argument that these sources of proof are relevant and located in this District.

S.A. 20.  The district court then expressly refers to these facts again in support of its conclusion that the local interest factor is neutral:

> Additionally, Uniloc contends that between the witnesses it identified (*e.g.*, Ms. Titus, seven employees in Austin with duties concerning Apple's CDN, and others) and the fact that Flextronics is located in this District, this factor weighs against transfer or is at worst, neutral.

S.A. 32.

The district court also found that Apple contracts with Flextronics to manufacture one of the accused products in Austin (and that Flextronics has hundreds of employees in WDTX some of whom may be relevant witnesses). S.A. 33. Far from giving "Flextronics little weight" as the majority suggests, the district court found that Flextronics' presence in the district "also contribute[s] towards a higher localized interest in this case" and weighs against transfer.[1]  *Id.*  Finally, Apple has multiple retail stores with employees and customer support personnel to instruct and train users on

---

[1]   The district court's conclusion that the local interest factor "would be neutral in terms of transfer" absent Flextronics' presence does not justify the majority's blatant disregard for the fact that Flextronics manufactures an accused product and "has a few hundred employees in the District—including some who may be potential witnesses." S.A. 33.

how to use the accused functionality. Weighing these facts, the district court determined that the local interest factor was neutral. S.A. 32–33.

Contrary to the majority's suggestion, the district court did not "fail[] to give weight" to the connections between this case and NDCA. Maj. at 18. The district court expressly acknowledged that Apple alleges that the software was designed and developed in NDCA. S.A. 31–32. And, as the majority concedes, the district court addressed the "relevant party witnesses residing in NDCA," and nonetheless concluded that this factor was neutral. That there are facts on both sides does not mean we grant mandamus. The majority may not agree with the district court's fact findings or may have weighed them differently, but it is impossible to say (and the majority never does) that the district court clearly abused its discretion in its local interest analysis.

And while the majority would rather not "engage with th[e] minor semantical point" of what the parties actually argue, even Apple's petition did not argue that it would be a clear abuse of discretion to find this factor neutral. Maj. at 18 n.7; Petition at 36 ("the local interest factor would at most be *neutral*"); *see also* Petition at 35 ("Any finding that the local-interest factor weighs against transfer would require legal error."). It wasn't until its reply brief when Apple for the first time alleged that this factor weighs in favor of transfer. I do not see how the majority can conclude that a district court clearly abused its discretion in finding this factor neutral where even the moving party argued that the facts support neutrality.

The majority dismisses Apple's and its manufacturer's significant presence in the district. Neither this court nor the Fifth Circuit has held that an accused infringer's general presence in a district is irrelevant to the district's local interest in resolving the case. *See, e.g.*, *In re Acer Am. Corp.*, 626 F.3d 1252, 1255–56 (Fed. Cir. 2010) (considering

as relevant to the local interest factor the fact that one of the parties alleged to have caused harm resided in the transferor district).  Moreover, the manufacture of the accused product in the district and the maintenance of a campus that may house documents related to the development of the accused products is indisputably relevant to the instant case.  And to the extent there is a dispute regarding whether Apple or Flextronics have may have information or witnesses in Austin relevant to this case, that is a fact-intensive matter left to the discretion of the district court, not the appellate court.  *See In re Apple Inc.*, 818 F. App'x. 1001, 1004 (Fed. Cir. June 16, 2020) ("Whether individuals or organizations may have relevant information . . . are fact-intensive matters often subject to reasonable dispute. . . . Those determinations are generally entrusted to the discretion of the district court.").

It is not for us to criticize the district court's weighing of these facts.  It is Apple's burden to prove that the local interest factor weighs in favor of transfer.  On this record, the district court did not clearly abuse its discretion in finding that Apple failed to meet that burden.

## Conclusion

I do not believe the district court's denial of Apple's transfer motion reflects a clear abuse of discretion.  The majority identifies a "misapplication of law to fact" in nearly every factor the district court analyzed.  But looking beyond this label, which the Fifth Circuit notably has never relied on as a basis for granting a petition for mandamus, the majority's criticism amounts merely to a disagreement with the district court's weighing of its thorough fact findings.  *See, e.g.*, Maj. at 12 ("The district court misapplied the law to the facts of this case" and "gave too much significance to the fact that the inventors and patent prosecutor live closer to WDTX than NDCA."); *id.* at 16 ("The district court misapplied the law to the facts of this case by relying too heavily on the scheduled trial date."); *id.* at 17 ("The

district court thus misapplied the law to the facts by so heavily weighing Apple's general contacts with the forum."); *id.* at 18 ("The district court also misapplied the law to the facts by failing to give weight" to the connections between NDCA and the suit.); *id.* at 19–20 ("Moreover, the district court did not otherwise provide any reason to give these employees and this activity weight above and beyond other relevant employees and activity."). Though the district court erred in considering events that occurred after the transfer motion was filed, the court cannot fairly be charged with having failed to "meaningfully consider the merits of the transfer motion." *See Barnes & Noble*, 743 F.3d at 1383. Nor can we say that the district court's well-reasoned decision amounts to a "a clear abuse of discretion or usurpation of judicial power." *In re Nintendo Co.*, 589 F.3d 1194, 1197 (Fed. Cir. 2009). The majority has simply substituted its judgment that transfer should be ordered for that of the district court. At most, the alleged errors identified by the majority would support a motion for reconsideration; they do not warrant the extraordinary remedy of mandamus. It is particularly troubling to grant mandamus here where the petition itself does not raise many of the arguments the majority relies upon in its decision. Under the proper standard of review, I believe the only patently erroneous result here is the one reached by the majority. I dissent from that result. Though the standard of review is not de novo, because the majority has approached the case as though it is, let me add—I agree with the district court and I would have denied transfer de novo.

**Misc. No. 2020-135**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

**In re Apple, Inc.**

### CERTIFICATE OF SERVICE

I, Christian John Hurt, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

On **December 9, 2020,** I caused the foregoing **Uniloc 2017 LLC's Petition for Rehearing En Banc** to be filed with the Clerk of Court using the CM/ECF System, which will serve via e-mail notice of such filing to all counsel registered as CM/ECF users.

December 9, 2020                         /s/ Christian John Hurt
                                         Christian John Hurt
                                         *Counsel for Petitioner*

# CERTIFICATE OF COMPLIANCE

1.     This petition complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2), because it contains 3886 words excluding the parts of the brief exempted by Federal Circuit Rule 27.

2.     This petition complies with the typeface requirements of Federal Rule of Appellate Procedure 32(5)(A)(B), because it has been prepared in a proportionally spaced typeface using Microsoft Word 2020 for Mac in Times New Roman 14 point font.

Date: December 9, 2020                    /s/ Christian John Hurt_____
                                          Christian John Hurt
                                          *Counsel for Petitioner*